**In re the Marriage of LuAnn Annetta KOTILA, petitioner, Respondent,**

**v.**

**Gordon Craig KOTILA, Appellant.**

**No. C8-84-45.**

Court of Appeals of Minnesota.

July 17, 1984.

Robert H. Zalk, Michael A. Trittipo, Minneapolis, for appellant.

Stephen C. Sperry, Litchfield, for respondent.

Heard, considered and decided by POPOVICH, C.J., and HUSPENI and NIERENGARTEN, JJ.

## OPINION

POPOVICH, Chief Judge.

Appellant Gordon Kotila appeals from the amended judgment entered January 3, 1984, awarding custody of the parties' minor child to respondent LuAnn Kotila, subject to appellant's right of reasonable visitation. The trial court found the best inter-

ests of the minor child would be best served by awarding custody to respondent. We affirm.

## FACTS

Gordon and LuAnn were married on August 31, 1974. Their son, Erick, was born on July 24, 1977. The Kotilas lived on a family farm owned by Gordon's parents. Gordon is a farmer. He gets up early, has chores throughout the day and returns at approximately 7:30 in the evening. LuAnn worked during the marriage, usually on a part-time basis.

Problems developed during the marriage including financial, in-law, disagreements about LuAnn's continued employment and Gordon's unwillingness to participate in activities away from the farm. The parties separated in December 1981.

When LuAnn told Gordon she was leaving home, Gordon sat on the floor, held Erick, and refused to let her take him. He said that if LuAnn took Erick, he wouldn't have anybody and would not want to continue living. LuAnn left Erick with Gordon, but shortly thereafter, sought custody.

Prior to the separation, LuAnn was the primary nurturing parent. Gordon, on the other hand, spent little time with Erick during the first few years of Erick's life. As soon as Erick began to walk, Gordon spent time with Erick in the evenings. It is clear Erick now has a good relationship with both parents.

In February 1982, LuAnn filed for dissolution of the marriage. By stipulation between the parties, custody of Erick alternated on a weekly basis. On April 15, 1983, the trial court dissolved the marriage and awarded custody of Erick to LuAnn, subject to Gordon's right of reasonable visitation. The custody award did not contain specific findings, so on November 30, 1983, the court amended the judgment and decree by adding specific findings regarding the custody award.

## ISSUE

Did the trial court abuse its discretion in awarding custody of the parties' minor child to respondent LuAnn Kotila?

## ANALYSIS

Gordon claims the trial court's findings of fact are statutorily insufficient to support the award of custody.

■ 1. The trial court has broad discretion in awarding child custody in dissolution proceedings. Its decision may not be set aside unless the trial court clearly abused its discretion or acted arbitrarily. *Peterson v. Peterson*, 308 Minn. 365, 368, 242 N.W.2d 103, 106 (1976); *Pikula v. Pikula*, 349 N.W.2d 322, 323 (Minn.Ct.App. 1984) (the trial court's decision will not be disturbed unless the record fails to support an award of custody). The applicable statute, Minn.Stat. § 518.17 (1982), requires the grant of custody be based on the best interests of the child. *Weatherly v. Weatherly*, 330 N.W.2d 890, 891 (Minn. 1983).

2. Minnesota Statutes section 518.17, subd. 3, provides, in part:

Upon adjudging the nullity of a marriage, ... the court shall make such further order as it deems just and proper concerning: (a) the legal custody of the minor children of the parties which shall be sole or joint; (b) their physical custody and residence; and (c) their support. In determining custody, the court shall consider the best interests of the child and shall not prefer one parent over the other solely on the basis of the sex of the parent.

Minn.Stat. § 518.17, subd. 3 (1982).

The legislature has specified nine factors to be considered by the court when determining the best interests of the children:

"The best interests of the child" means all relevant factors to be considered and evaluated by the court including:

(a) The wishes of the child's parent or parents as to his custody;

(b) The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference;

(c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(d) The child's adjustment to his home, school, and community;

(e) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(f) The permanence, as a family unit, of the existing or proposed custodial home;

(g) The mental and physical health of all individuals involved;

(h) The capacity and disposition of the parties to give the child love, affection, and guidance, and to continue educating and raising the child in his culture and religion or creed, if any; and

(i) The child's cultural background.

The court shall not consider conduct of a proposed custodian that does not affect his relationship to the child.

Minn.Stat. § 518.17, subd. 1 (1982).

3. All other factors being equal, Minnesota courts prefer to award custody to the child's primary caretaker. In *Berndt v. Berndt*, 292 N.W.2d 1 (Minn.1980), for example, our Supreme Court stated:

1. Although the evidence indicates that both LeRoy Leonard Berndt and Leona Evelyn Berndt would be suitable custodians for Nichole, Leona Evelyn Berndt has been the primary parent since the child's birth on October 1, 1976. There is nothing in the record to suggest that during this three and one-half year period Leona Evelyn Berndt has in any way failed to give the child suitable care and affection. The intimacy of the relationship between parent and child to be assumed under such circumstances should not be disrupted without strong reasons which relate specifically to the parent's capacity to provide and care for the child.

*Id.* at 2; *Weatherly*, 330 N.W.2d at 892.

The record in this matter indicates that, while both parties love the child and would be suitable custodians, LuAnn has been primarily responsible for Erick for most of his life. Both parties concede LuAnn was the primary parent from the time of Erick's birth until the separation, a period of approximately 4½ years.

■ 4. Gordon, however, argues that LuAnn's history of job instability indicates the grant of custody to her is not in Erick's best interests. The court may not, however, consider conduct of the proposed custodian that does not affect her relationship with the child. *See generally* Minn.Stat. § 518.17 (1982). In *Weatherly* our Supreme Court held a sixteen-year-old mother had demonstrated stability and responsibility by completing the requirements for her high school G.E.D., and found her past behavior, including job instability, had no bearing on her ability to care for her son. Conversely, it found the father's "stable" job was not a factor "indicative of ... emotional stability in the context of the parent-child relationship." *Id.* at 892. LuAnn's alleged job instability was properly ignored by the lower court.

5. Another factor for consideration is the "capacity and disposition of the parties to give the child love, affection, and guidance, and to continue educating and raising the child in his culture and religion or creed ...." Minn.Stat. § 518.17 subd. 1(h) (1982). While both parents gave the child love and affection, it is apparent from the record that neither party had a greater capacity to discipline Erick. A social worker testified both parents had trouble disciplining the child.

■ 6. Finally, Gordon claims the trial court erred by ignoring the custody investigation report. He cites *Weatherly*, where the trial court ignored two professional reports and the supreme court reversed. In *Weatherly*, however, the trial court disregarded all evidence reflecting

negatively on the husband and dismissed as situational the husband's irrational and hostile behavior. *Weatherly,* 330 N.W.2d at 892. A custody report which does not contain a clear statement of preference for one parent over the other is generally given less weight. In this matter the investigation report indicates neither party would be a bad parent and there is an "equality of parenting ability". No clear preference was evident. Evaluation of a custody report is within the discretion of the court.

## DECISION

The record in this matter supports the conclusion that Erick's best interests will be best served by a grant of custody to his mother. The trial court did not abuse its discretion in evaluating the evidence and in awarding custody of the parties' minor child to the mother.

Affirmed.