**Kelly Jo PIKULA, Appellant,**

v.

**Dana David PIKULA, Respondent.**

**No. C6-83-1393.**

Court of Appeals of Minnesota.

May 29, 1984.

Review Granted Sept. 5, 1984.

Stephen C. Rathke, Brainerd, for appellant.

John H. Erickson, Brainerd, for respondent.

Heard, considered and decided by POPO-VICH, C.J., and FORSBERG and RANDALL, JJ.

## OPINION

RANDALL, Judge.

This appeal is taken from an order dated August 22, 1983, which amended the Findings of Fact issued in a dissolution between the parties and denied appellant's motion for a new trial. We reverse and remand.

## FACTS

The parties were married March 29, 1980, when appellant-mother was 17 and respondent-father was 20. The parties' two children are girls, Tiffany, age 4, and Tanisha, age 3. The dissolution trial was heard November 9 and 10, 1982. A court ordered custody evaluation, involving at least three social workers, recommended that custody of both daughters remain with the mother and that she undergo counselling, not to overcome "any deficit in her

ability to parent, but rather as recognition that the role of the single parent is extremely demanding." Witnesses testifying at trial disputed the abilities of each parent. Both parties claimed the best interests of the two children lay with their having legal custody with visitation to the other. The trial court, by findings and conclusions, issued April 14, 1983, and amended August 22, 1983, granted custody of both children to respondent-father.

## ISSUE

Whether the trial court properly granted custody of the parties' two children to respondent.

## ANALYSIS

A trial court ruling on the issue of child custody has broad discretion to determine, with reference to Minn.Stat. § 518.17, the best interests of the children. *Peterson v. Peterson*, 308 Minn. 365, 242 N.W.2d 103 (1976). To ensure meaningful appellate review, the trial court must set forth the basis for its decision with particularity. *Wallin v. Wallin*, 290 Minn. 261, 187 N.W.2d 627 (1971). The court's decision will not be disturbed unless the record fails to support an award of custody.

The Legislature has specified the factors to be considered by the court when determining the best interests of the children:

(a) The wishes of the child's parent or parents as to his custody;

(b) The reasonable preference of the child, if the court deems the child to be of sufficient age to express preference;

(c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(d) The child's adjustment to his home, school, and community;

(e) The length of time the child has lived in a stable, satisfactory environment and the desirability of maintaining continuity;

(f) The permanence, as a family unit, of the existing or proposed custodial home;

(g) The mental and physical health of all individuals involved;

(h) The capacity and disposition of the parties to give the child love, affection, and guidance, and to continue educating and raising the child in his culture and religion or creed, if any; and

(i) The child's cultural background.

The court shall not consider conduct of a proposed custodian that does not affect his relationship to the child.

Minn.Stat. § 518.17 (1982).

In awarding custody to the respondent-father, the trial court made two key findings:

*Finding 11.* That there is a strong, stable, religious family group relationship within the Pikula family that has been developed, nurtured and cultivated over the years. It has stood like a bedrock through the depression years and post-war years of plenty and permissiveness. This environment has inbred in the family a unity, respect, loyalty and love that for the most part has been destroyed and lost in most modern American families. It is in the best interest of the children that they be kept in the cultural family environment.

*Finding 12.* That the environment in which petitioner finds herself is almost the exact opposite. It is characterized by self-interest and excessive liberalism.

Both findings were amended on August 22, 1983:

*Amended Finding 11.* That there is a strong, stable, religious family group relationship within the Pikula family, including respondent and the children, that has been developed, nurtured and cultivated over the years. It has stood like a bedrock through the depression years and post-war years of plenty and permissiveness. This environment has inbred in the family, including respondent, a unity, respect, loyalty and love that for the most part has been destroyed and lost in most modern American families. It is in the best interests and welfare of the children that their custody be awarded to respondent, who shares these attributes and who will assure that these children will be raised in the present culture, family, religious and community environment of which they have been and are integral parts, which environment affords them stability, appropriate socializing and family orientation. The children are properly adjusted to their current home situation, broadly defined, and to the greater community within which they have lived virtually their entire lives. The children behave well and have extensive and qualitative contacts with significant persons within this environment, respondent's personal environment continues to stabilize and improve and is presently satisfactory, as well as gives indications of continuing stability, and it is desirable that the children's continuity with respondent and significant other persons and institutions here be maintained, respondent offering a permanent, well-established, concerned and involved, as well as supporting home for the children, the overall help of those who likely will here affect the mental, physical, emotional, educational, cultural and religious growth of the children is good, and respondent is inclined to, has and likely will continue to care for the children and raise them in their religion, creed and culture.

*Amended Finding 12.* That the environment in which petitioner finds herself is almost the exact opposite of that in which respondent lives and will raise the children, it would subject the children to considerable uncertainty and instability in home, community, culture, persons and religion, should custody be awarded to petitioner, and further, such an award would disrupt, curtail and likely end the children's nurturing and constant contacts with the environment, persons and institutions now significantly and positively affecting their lives, petitioner's behavior and practices of child rearing as

well as her interest in her children are at least subject to serious question and doubt, and it would not be in the children's best interest to award their custody to petitioner.

■ Little reference was made by the trial court to the factors found in Minn. Stat. § 518.17. Instead, the court emphasized the desirability of the father's extended family. The statute requires an examination of proposed *custodians* and the environment they would provide, The paternal grandparents did not apply for custody and may not be preferred over the natural mother in the absence of grave reasons for doing so. *Wallin v. Wallin*, 290 Minn. 261, 187 N.W.2d 627 (1971). In the custody study, two non-relatives predicted that if respondent was awarded custody, the children would be raised by the paternal grandparents.

In applying Minn.Stat. § 518.17 to this case, factors (a) and (b) are not helpful, since both parents sought custody and the children were too young to express their preferences. The court stressed the relationship of the father's family with the children and mentioned the girls' relationship with the parties only briefly. The custody evaluation, virtually ignored by the court, noted that appellant-mother, as the primary care giver and person most able to provide a loving environment, was the most functional parent. *Berndt v. Berndt*, 292 N.W.2d 1 (Minn.1980). The custody study contained a clear statement of preference for appellant as custodian. The court dismissed the expert opinions of three social workers on the ground that only the court had the benefit of all the evidence. The custody report and recommendation noted respondent at times used the children against their mother, despite his acknowledgment that this behavior could cause trauma to the children.

Factors (d) and (e) refer to the continuity of a comfortable environment. It is not clear to what extent children who were four years and two and one-half years old at the time of the order amending findings may be adjusted to "home, school, and community." Neither child attended school and little testimony was elicited on community involvement. There was testimony on the children's involvement with the paternal grandparents.

When evaluating the permanence of the proposed custodial family unity, factor (f), the trial judge noted the stability of the father's family, even though the grandparents were not intended to be custodians. The court chose not to examine the mental and physical health of the parents, factor (g), gave no weight to testimony that respondent-father is chemically dependent, habitually untruthful, is extremely dependent upon his parents, has poor control of his temper and is unable to give the children's welfare priority over his own desires. The court noted that respondent's environment is improving, but ignored all evidence of appellant's growing maturity and gains made in counselling.

The court apparently placed great importance on the continuation of religious training for the children. Despite appellant's plans to continue raising her daughters in the Catholic faith, the court concluded that factor (h) required contact with the "respondent and significant other persons" to raise the children "in their religion, creed and culture." No reference was made to the ability of either party to give the children love and affection. The court repeatedly stressed the importance of maintaining contact with the cultural background, factor (i), of the children, although the testimony refers only to family gatherings and church activities.

■ Both parties are imperfect parents. However, the trial court noted only the father's good points and the mother's problems. Many of the strengths and virtues attributed to the husband are actually strengths of his family. Where the trial court disregards virtually all evidence reflecting negatively on the father, and substantial evidence favoring the mother's custody, the court has erroneously applied the statutory factors. *Weatherly v. Weatherly,* 330 N.W.2d 890 (Minn.1983).

The trial court, for all practical purposes, disregarded the custody evaluation. The court indicated it was better qualified than the social workers to evaluate the complete facts.

■ By contrast, the trial court carefully catalogued petitioner's faults and contrasted her divorced parents and other family members with her husband's extended family. Respondent's own two sisters had conceded appellant was a good mother and an adequate disciplinarian "for the most part." The testimony cataloging appellant's faults came from five Pikulas: respondent, his two parents, and two sisters. Every witness found competent to testify and be sworn is capable of being believed. A blood relationship to one of the parties is not a disqualification, but the trier of facts, whether a judge or a jury, must keep in mind the witness's relationship to either party and his or her interest or lack of it in the outcome. Hetland and Adamson, *Minn:Practice*, Vol. IV, JIG II, 21 G–S, 1, 2.

It appears to us that appellant was penalized for the divorce and subsequent remarriage of her parents, for actions and attitudes of other close relatives, and for her involvement with persons concerned about women's issues. The record shows no evidence of any adverse impact upon the children due to appellant's family. The statute specifically excludes conduct not affecting the relationship of a proposed custodian to the child from consideration in determining custody. The court made no finding that remarriage of the maternal grandparents, the choice of one aunt to date a motorcyclist, or the social activities of another aunt, in any way affected the relationship between children and mother. Appellant did have plans to leave Crow Wing County, move to the Twin City area and seek employment. Despite the conclusions of the social workers that petitioner dealt with her children appropriately and was interested in improving her parenting skills, the court concluded her child rearing practices were "subject to serious question."

## DECISION

■ A trial court ruling on child custody has broad discretion. However, because this record, even when viewed in the light most favorable to the father as prevailing party, fails to support the findings, this court is obligated to apply the statute and grant custody to the mother.

We reverse the decision of the trial court and remand with direction to enter judgment granting custody to the mother with the previous visitation schedule awarded to appellant now granted to respondent. Should either party, after enough lapse of time to give this visitation schedule a fair trial, feel a change would benefit the children, each retains the right to petition the court for modification of the visitation schedule.

REVERSED.