In the Matter of the WELFARE OF
L.P.C., B.R.C., C.L.C., M.C.C.,
and J.S.C.

No. CX–84–1990.

Court of Appeals of Minnesota.

May 21, 1985.

Patrick J. O'Meara, Edward J. Hance Law Offices, Ltd., Minneapolis, for appellants.

James E. O'Neill, Pipestone County Atty., Timothy K. Anderson, Asst. County Atty., Pipestone, for Pipestone County.

Benjamin Vander Kooi, Jr., Luverne, for B.R.C., C.L.C., M.C.C., and J.S.C.

Eric A. DeRycke, Lake Benton, for L.P.C.

Heard, considered and decided by PARKER, LANSING and HUSPENI, JJ.

## OPINION

PARKER, Judge.

The matter of the "C" children first came before this court about a year ago upon appeal by the parents [1] from an order of the Pipestone County Juvenile Court finding eight of the children to be neglected, based in part on allegations of certain sexual improprieties between the father and two of the adopted daughters. This court held that the evidence sustained the trial court's findings as to four children and affirmed as to MCC, CLC, JSC, and BRC. We found that the evidence was insufficient as to four others, JIC, PHC, APC, and MPC, and reversed as to them. *See In the Matter of the Welfare of the C. Children,* 348 N.W.2d 94 (Minn.Ct.App. 1984). Another child, LPC, was in foster placement and not directly affected by the ruling. Thus, five of the children remained subject to the jurisdiction of the Pipestone County Juvenile Court and have been placed in foster homes.

The case now before the court involves an appeal by the parents from an order of the Pipestone County Juvenile Court, after review hearings in July and August 1984, refusing the parents' request that the custody of all of the children be transferred to Hennepin County, where the parents and other children now reside. The juvenile court ordered that jurisdiction over two of the children, JSC and BRC, be transferred to Hennepin County Juvenile Court and that the custody of CLC, MCC, and LPC remain with the Pipestone County Family Service Center (Pipestone County). We affirm.

## FACTS

In July 1983 the county court had ordered the parents to submit to a therapeutic counseling program and indicated that reintegration of CLC, MCC, and JSC into the family was wholly dependent upon the successful completion of therapy. The par-

---

1. The family consists of nine children—two natural children and seven placed through the adoption process. Of the latter, LPC and MCC are blood brothers; BRC and CLC are blood siblings; and PHC, JSC, and JIC are blood siblings. All the adoptive children except JSC are now in their teens. The natural children are younger.

ents began counseling with psychotherapist Jane Johnston in September 1983 but terminated the relationship in March 1984. In April 1984 the parents initiated a therapy program with Diane Stellbrecht, a licensed psychologist.

Review hearings were held on July 18, 1984, and August 8, 1984. Pipestone County and counsel for the children presented reports and statements at the former and evidence on behalf of the parents was presented at the latter.

Johnston stated in her April 16, 1984, report to the county that the parents' denial of any wrongdoing served as a barrier to effective therapy, and she expressed doubt about their amenability to treatment. Psychological tests showed patterns of denial and evasion in both parents. Brenda Popma, a Pipestone County social worker, indicated that visitation has been frustrated by the father's belligerent attitude and disruptive behavior. For example, he once insisted that visitation be conditioned upon confronting CLC and MCC about the "lies they told in court." [2] In addition, the father was imprisoned for welfare fraud between September 20, 1983, and April 24, 1984,[3] rendering visitation as contemplated by the court impossible.

Diane Stellrecht's evaluation of the parents differed markedly from Johnston's. Stellrecht testified that they had made adequate progress in counseling and were amenable to further therapy. The court discounted Stellrecht's testimony in part because she had relied almost solely on the parents for her information and she had been unaware of a significant incident of sexual misconduct between the father and CLC before the August 8 hearing.

At the time of the hearings the custody status of the five children was as follows:

1. BRC, age 15, was a resident at St. Joseph's Home for Children, a residential treatment center in Minneapolis;

2. JSC, age 11, was in foster care in Minneapolis and had adjusted appropriately;

3. MCC, age 13, was in foster care in the Pipestone area. The parents' adoption petition had been denied by the Pipestone County Court;

4. CLC, age 14, had been in foster care in the Pipestone area for a year and had adjusted well;

5. LPC, age 16, had been in foster care in the Pipestone area since July 1982. He was doing well in high school both socially and academically;

CLC, MCC, and LPC had expressed their desire not to have any further visitation with the parents.

Popma's recommendations to the court included the following:

1. That jurisdiction of BRC and JSC be transferred to Minneapolis because the children, their counselors, and the parents are all there;

2. That CLC stay in her current foster home on a long-term basis because another move, against her will, could be emotionally damaging;

3. That Pipestone County be given authority to place MCC's name on the state adoption register and begin efforts to place him in an appropriate family.

The trial court's order reflects Popma's recommendations, with the added provision that LPC shall remain in his current foster home in the custody of Pipestone County.

## ISSUES

1. Was the evidence sufficient to support the trial court's refusal to transfer custody of CLC to Hennepin County?

2. Did the trial court err in concluding that reasonable efforts have been made to unify the family?

3. Did the trial court err in concluding that no progress had been demonstrated in therapy?

## DISCUSSION

### I

Appellants sought to transfer the children's custody to Hennepin County to faci-

---

2. Allegations of sexual abuse were proved to the trial court's satisfaction and affirmed on appeal.

3. He had also been imprisoned for aggravated assault several years earlier.

litate reintegration with the family. Minn. Stat. § 260.121, subd. 2 (1984), provides in relevant part:

When it appears that the best interests of the child, society, or the convenience of proceedings will be served by a transfer, the [judge of a juvenile] court may transfer [a] case [concerning dependent and neglected children] to the juvenile court of the county of the child's residence.

■ There is a presumption in Minnesota that it is in the best interests of a child to be united with its parents. *In re Petition of Alsdurf*, 270 Minn. 236, 242, 133 N.W.2d 479, 482 (1965); *In re Welfare of A.R.W.*, 268 N.W.2d 414, 417 (1978), *cert. denied*, 439 U.S. 989, 99 S.Ct. 588, 58 L.Ed.2d 663 (1978).

That principle applies not only in an original neglect proceeding but also where the parents, having once been found neglectful, "reasonably prove that they are both able and willing to love, support, care for, and educate their children" and seek restoration of custody.

*In re Welfare of A.R.W.* at 417 (quoting *In re Dependency of Klugman*, 256 Minn. 113, 118, 97 N.W.2d 425, 428 (1959)).

■ The burden of proving the parents' unfitness is on the party objecting to restoration of parental custody. *Id.* The trial court found the county had sustained its burden of showing the proposed transfer was not in the children's best interest. We agree.

We observe at the outset that the evidence presented in this case was properly received. Minn.Stat. § 260.181, subd. 2 (1984), provides:

Before making a disposition in a case * * the court may consider any report or recommendation made by the county welfare board * * * or any other information deemed material by the court.

■ In addition, at formal review and disposition hearings "[t]he court may receive any information, except privileged communications, that is relevant to the disposition of the cause including reliable hearsay and opinions." *See* Minn.R.P.Juv. Cts. 62.04, subd. 2; 62.07, subd. 4. Thus,

the court properly considered reports and recommendations of the psychology experts and Pipestone County, along with the children's testimony.

Appellants argue that the trial court erred by ignoring the recommendation of both psychology experts, Johnston and Stellrecht, that CLC be placed in foster care in the Minneapolis area to facilitate family counseling. They claim that because no difference of opinion existed between the experts, the court could not reject it. *See Kundiger v. Prudential Insurance Co.*, 219 Minn. 25, 29, 17 N.W.2d 49, 52 (1944).

Appellants' characterization of the experts' opinions as the same is incorrect. In fact, Johnston was very critical of both the father and mother. She reported that both parents denied any wrongdoing by the father and were poor candidates for psychotherapy because of their history, personality profiles, attitudes, and lack of progress in therapy. Johnston found the father to be dominating, manipulative, and resistant to change. The mother, on the other hand, was reported to be passive, lacking in personal insight, and ineffectual with the children.

Although Stellrecht disagreed with Johnston, the court questioned her credibility and judgment. Stellrecht admitted she based her therapy and opinions on information given by the parents. The information given was misleading in that crucial facts were withheld. Thus, she was unaware of a serious incident of sexual misconduct between the father and CLC until the day before the hearing.

■ Where opinions of experts conflict, as they do here, the finder of fact is to determine the more credible and acceptable view. *State ex rel. Trimble v. Hedman*, 291 Minn. 442, 456, 192 N.W.2d 432, 440 (1971). Here the court accepted Johnston's view that the parents have not succeeded in counseling and concluded that the parents had not completed the first prerequisite to a successful reintegration of the family. This conclusion was not erroneous.

In addition to the psychologists' reports, the court had before it Brenda Popma's report indicating that attempts at visitation were thwarted by the father's confrontational attitude and disruptive behavior. This supports Johnston's evaluation and the court's conclusion that the family's problem had worsened rather than improved.

■ Finally, both the county and the guardian ad litem recommended that Pipestone County retain custody of CLC. The recommendations were based in part on reports that CLC preferred her current foster placement and wanted "nothing more to do with" the parents. The preference of the child as to future custody is entitled to considerable weight if the child is of sufficient age to exercise discretion. *Matter of Welfare of M.M.B.*, 350 N.W.2d 432, 435 (Minn.Ct.App.1984) (citing *In re Dependency of Klugman*, 256 Minn. at 122–23, 97 N.W.2d at 431–32). We agree with the trial court's finding that CLC's preference was understandable in view of the father's insistence that visitation be initiated with a confrontation about her "lies in court."

■ Based on the above evidence, the trial court found that the home conditions had not changed and that CLC's best interests would not be served by transferring custody to Hennepin County. We find this conclusion well supported by the evidence.

## II

Appellants contend that reasonable efforts have not been made to return the children to the family because Pipestone County failed to arrange adequate visitation.

To facilitate the process of family reintegration, an intervening agency is required to assist the family through visitation and other needed services. Minn.Rules 9560.-0580, 9560.0610 (1983). In its October order the trial court found in part:

8. Reasonable efforts have been made to return the children to the [C] home, but such efforts have not been successful due to the attitude and behavior of the father * * *.

* * * * * *

11. Visitation between [the parents] and the children has not been successful due to the attitude and behavior of [the father] in large part. [The father] seeks to initiate further visitation with a confrontation between himself and [CLC and MCC] regarding the children's testimony in the initial dependency proceedings.

■ We find the trial court's conclusions are justified. As discussed in the previous section, reports of the professionals involved found that the father's confrontational and authoritarian approach had a negative effect on visitation. This is best exemplified by the disruption which occurred when the father insisted on confronting the children about alleged "lies" during a visitation. Another example is the father's presentation of an agenda at a session arranged to discuss future visitation. When the agenda was not followed, the father refused to participate, and no progress was made toward establishing future visitation.

Moreover, the children have resisted efforts toward reunification with the parents. CLC, MMC, and LPC have all expressed their desire to have no further contact with them. In view of the parents' attitudes, the trial court was justified in concluding that it must respect the children's position.

It is clear the father's attitude and behavior have impeded visitation efforts. Moreover, psychologist Johnston's report indicates that the father has no insight into his behavior; thus, there is little chance that the changes needed for reunification will occur. There is ample evidence to support the trial court's conclusion that the county's efforts toward reunification were reasonable under the circumstances.

## III

The July 1983 order specifically conditioned restoration of CLC, MCC, and JSC to the home upon the successful completion of a confrontive therapy program. In its October 1984 order the trial court found that "[n]o progress towards individual or family therapy has been demonstrated which would hopefully lead to the reuniting of the

[C] family." Appellants contend this finding was not justified because psychologist Stellrecht testified that the parents were progressing well in therapy.

■ Once again the trial court's finding was based on the reports of psychologist Johnston and social worker Popma. Johnston indicated that the parents had made no progress in therapy. Popma reported that the father still exhibited a hostile and belligerent attitude in dealing with the children while the mother stood by passively. At the same time, the court chose not to accept Stellrecht's testimony because it questioned the basis of her opinions and method of therapy. The trial court's decision to accept the testimony of one expert and reject the conflicting testimony of another was not error. *See State ex rel. Trimble,* 291 Minn. at 456, 192 N.W.2d at 440.

■ The trial court's conclusion that the fault lies in the attitude of these parents is abundantly supported by the record. The trial court, counsel for the county, and the guardian ad litem have exercised commendable patience and diligence in dealing with this difficult family problem.

## DECISION

The order transferring jurisdiction over JSC and BRC to Hennepin County Juvenile Court is not contested; the order retaining jurisdiction over CLC, MCC, and LPC in Pipestone County in the custody of the Pipestone County Family Service Center is based on sufficient evidence.

Affirmed.