**In re the Matter of the WELFARE OF P.L.C. and D.L.C., minor children.**

**No. CX–85–1790.**

Court of Appeals of Minnesota.

March 25, 1986.

N.W.2d 85, 87 (Minn.1985).

Charles J. Ramstad, Irvine, Ramstad, Quam, Briggs & Irvine, P.A., Perham, for appellant Father.

Michael J. McCartney, McCartney Law Office, Breckenridge, for respondent Grandparents.

Considered and decided by NIEREN-GARTEN, P.J., FORSBERG and LESLIE, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

This appeal is from an order granting a petition for guardianship brought by the grandfather of the minor children, P.L.C. and D.L.C., of appellant and his deceased ex-wife. The trial court awarded custody to the respondent grandparents, and the father appeals. We reverse.

### FACTS

P.L.C. was born on June 11, 1979, and D.L.C. on April 21, 1982, to appellant and his wife P.R.C. The couple separated in August, 1983, and was divorced on January 19, 1984. Shortly after the divorce, P.R.C. learned she had cancer. She died on October 31, 1984.

The dissolution judgment and decree provided for joint legal custody of the children, with physical custody to the mother, subject to reasonable visitation by the appellant. The mother also had custody of a third child, born to her of a previous marriage. Custody of this child was also disputed at the trial court between the grandparents and the father of this child, but that matter is not at issue on appeal.

The will of P.R.C. appointed her parents, the respondent grandparents, legal guardians of all three children. The trial court, however, found that the will was not determinative on the issue of custody. There was also testimony as to the mother's expressed wishes for custody of the children after her death, but the trial court noted that this testimony was conflicting.

After the marital separation in August, 1983, the children stayed primarily with their mother in the grandparents' house, according to testimony of the grandparents, and others. After the death of his former wife, appellant sought to move the children to his home. The grandparents then brought a petition for temporary and permanent appointment as guardians of the children, and obtained an order keeping the children in their home pending a decision on the petition.

The trial court ordered pre-hearing home studies and psychological evaluations of the father and the grandparents. The home study of the father was generally positive, as was that of the grandparents. The home study of the father described him as "an involved parent who appeared sincere in his concern and love for his children."

The psychological evaluation of appellant was not favorable. Dr. Ascano, the psychologist chosen to conduct the evaluation, was positive as to appellant's relationship with his children, but the MMPI administered to him was interpreted as follows:

It suggests that [the father] has a recurrent or recent history of substance abuse. He has the tendency to have difficulty in restraining impulses, or keeping them within acceptable social norms. * * * History of marital discord and spouse abuse is usually common in this type of psychological profile.

Dr. Ascano recommended that custody of the children should be placed with the grandparents, "[e]specially in light of * * * [the father's] predicament with alcohol." He noted an incident of the father coming to his office in the morning with alcohol on his breath.

Appellant admitted to having had 2 DWI's, one 10 years and the other about 15 years before the hearing. He admitted to having had a drinking problem in the past, but denied he was an alcoholic. He estimated his consumption at a pint of liquor a week. Appellant stated, and some witnesses corroborated his testimony, that he never drinks at home, or around the children, except at occasional social functions.

Dr. Ascano testified that appellant's MMPI profile was associated with spousal abuse. The trial court found that appellant had physically abused his ex-wife.

Evidence of physical abuse of the children was limited to appellant's admission that he had pulled his stepson's hair once to quiet him in church, and to testimony that he pulled one of his daughter's arms at his former wife's funeral. The trial court found "there was an indication said

girls had suffered some physical abuse" at the home of their father.

Since his divorce, the father has been living with a woman who is in the course of divorce proceedings with her husband. Testimony showed that appellant had had a relationship with her years earlier, resulting in the birth of a son, now 14, who is living with them. The couple testified to their intent to marry. The trial court also found "[t]hat [the father] does not attend church regularly or often or tend much to the religious upbringing of [the] girls."

Appellant has been employed for sixteen years in a family-operated bait and commercial fishing operation. He lives about 55 miles from the grandparents.

### ISSUE

Did the trial court abuse its discretion in awarding custody to the grandparents?

### ANALYSIS

The trial court identified the correct standard to apply in determining whether custody should be placed with the father or the grandparents. That standard involves a combined consideration of the "best interests of the child" and the presumption of parental fitness.

■ Both the dissolution and guardianship statutes use the "best interests of the child" standard. *See* Minn.Stat. § 518.18(d) (1984) (modification of custody order in dissolution decree); Minn.Stat. § 525.6175 (1984) (appointment of guardian of a minor). The presumption that a parent is fit to have custody of his child, and the standards to be met in proving parental unfitness arise out of cases involving the termination of parental rights. *See In re Welfare of A.R.W.*, 268 N.W.2d 414, 417 (Minn. 1978) (presumption of parental fitness is based in part on the public policy determination that the best interests of the child are normally served by parental custody).

Our supreme court has combined the two standards in determining custody disputes between a parent and grandparents, or other third parties. *Wallin v. Wallin,* 290 Minn. 261, 187 N.W.2d 627 (1971). The court in *Wallin* stated as follows:

> Thus, it would seem to be a fundamental rule of law that, all things being equal, as against a third person, a natural mother would be entitled as a matter of law to custody of her minor child unless there has been established on the mother's part neglect, abandonment, incapacity, moral delinquency, instability of character, or inability to furnish the child with needed care [citations omitted]; or unless it has been established that such custody otherwise would not be in the best welfare and interest of the child [citations omitted].

*Id.* at 266, 187 N.W.2d at 630.

As *Wallin* implies, there is no conflict between the two standards. The first part of the rule speaks in terms of "entitle[ment]" to custody, or parental rights, and the second in terms of the best interests of the child. The presumption of parental fitness, however, is not only an acknowledgment of parental rights; it has long been held to be a presumption that the best interests of the child are served by parental custody. *In re Welfare of A.R.W.*, 268 N.W.2d 414, 417; *see also Matter of Welfare of L.P.C.*, 367 N.W.2d 908, 911 (Minn.Ct.App.1985).

■ The grandparents had the burden of presenting evidence to overcome the presumption of parental fitness. *Wallin,* 290 Minn. 261, 265, 187 N.W.2d 627, 630. They had to show "grave reasons" for preferring them to a natural parent for custody of the children. *Pikula v. Pikula,* 349 N.W.2d 322, 325 (Minn.Ct.App.1984) (citing *Wallin* ), *rev'd on other grounds,* 374 N.W.2d 705 (Minn.1985). These reasons approach those required for the termination of parental rights. *See Wallin,* 290 Minn. 261, 266, 187 N.W.2d 627, 630 (citing some of the statutory grounds for termination). *Cf. Matter of Welfare of H.G.B.,* 306 N.W.2d 821, 825 (Minn.1981) ("grave and weighty reasons" required for termination).

In determining matters of custody, the trial court is vested with broad discretion. *Weatherly v. Weatherly*, 330 N.W.2d 890, 891 (Minn.1983) (dissolution proceedings); *Wallin*, 290 Minn. 261, 266–67, 187 N.W.2d 627, 631. Although appellant contends that the guardianship appointment is a de facto termination of his parental rights, the trial court awarded him visitation. Since he has not been deprived of all parental rights, we do not apply the stricter scrutiny accorded termination of parental rights cases on review.

Appellate review of custody determinations is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985).

The trial court relied on several reasons for its decision: the father's drinking, his living situation and church attendance with the children, evidence of physical abuse, and the need for continuity in care of the children. The court made the following finding of parental unfitness:

> That the risk to said girls at their father's home and the consequent danger, and their need for continuity and stability is such that said [father] is not fit to have either the guardianship or physical custody of said girls * * * *.

We believe the trial court improperly applied the *Wallin* standard, as indicated in this finding, by failing to accord appellant the presumption of parental fitness.

■ The need for continuity in care of children may support the denial of custody to a natural parent. *See State ex rel. Ashcroft v. Jensen*, 214 Minn. 193, 195–96, 7 N.W.2d 393, 395 (1943). Here, however, the father sought the custody to which he was entitled immediately after the death of the primary caretaker, the child's mother. *See Wilson v. Barnet*, 275 Minn. 32, 34, 144 N.W.2d 700, 702 (1966) (parent denied custody under divorce decree automatically resumes right to custody when the custodial parent's rights cease). Although much of the mother's caretaking occurred in the grandparents' home, continuity of care was not properly considered as a factor in determining custody. *Cf. Ashcroft*, 214 Minn. 193, 193–94, 7 N.W.2d 393, 394 (child voluntarily placed with third persons five months after birth had remained in their care for five years).

■ This court has stated the following regarding alcoholism and parental fitness:

> Alcoholism which interferes with a parent's long-term ability to provide a stable home or to care for a child may justify termination.

*Matter of Welfare of E.L.H.*, 356 N.W.2d 795, 797 (Minn.Ct.App.1984). In *E.L.H.*, the father drank to the point of intoxication 3 or 4 times per week. *Id.* at 796. His drinking was directly related to his failure to provide a home for his child. *Id.* at 797.

There was no finding or evidence to support a finding that appellant's drinking, whether diagnosed as alcoholism or not, affects his ability to care for the children. The undisputed evidence was that appellant assumed an active role in caring for the children during the marriage and consistently exercised visitation after the divorce. Both the home study and psychological evaluation noted a good parent-child relationship. Appellant owns his own home and has stable employment.

The evidence of physical abuse of the children is limited to possible inappropriate discipline by physical force. Without evidence of the degree of force, or evidence of resulting injury, however, appellant's inappropriate discipline was not a "grave reason" justifying denial of his right to custody. *Cf. Murray v. Antell*, 361 N.W.2d 466, 470 (Minn.Ct.App.1985) (spanking resulting in bruises was cause for consideration of change in custody from one parent to another); *Benson v. Webb*, 356 N.W.2d 352, 355 (Minn.Ct.App.1984) (physical punishment and verbal abuse by mother and stepfather which was found to be psychologically and physically harmful to the child supported change in custody).

■ Appellant's living arrangement and his churchgoing habits were not shown to

be detrimental to the children. Consideration of such factors, at least without further evidence, represents only "ad hoc judgments on the beliefs [and] lifestyles * * * of the proposed custodian." *Pikula,* 374 N.W.2d 705, 713. The religious training of children is a matter for the parents or custodians, to be handled without judicial interference unless it is invited by the parents or custodians themselves or unless continuity of religious training is required for the emotional health or development of the child. *See* Minn.Stat. § 518.176, subd. 1 (1984) (judicial supervision of custodial parent's exercise of authority); *Chapman v. Chapman,* 352 N.W.2d 437, 441 (Minn. Ct.App.1984) (parties stipulated that father should take children to Mass).

■ We do note with concern the possible presence in the father of a syndrome of alcohol abuse, and child and spouse abuse. The *Wallin* standard, however, requiring "grave reasons" for denial of custody to a natural parent, does not permit reliance on *risks* of detrimental behavior, or on identification of a psychological profile associated with such risks. In order to find parental unfitness in a proceeding to terminate parental rights, there must be

> a consistent pattern of specific conduct before the child or of specific conditions directly relating to the parent and child relationship either of which are determined by the court to be permanently detrimental to the physical or mental health of the child * * * *.

Minn.Stat. § 260.221(b)(4) (1984).

■ The trial court found evidence of spousal abuse. However, there was no showing that any such abuse was directly related to the parent-child relationship or permanently detrimental to the children, who were found by the trial court to have a good relationship with their father. In *Stangel v. Stangel,* 355 N.W.2d 489 (Minn. Ct.App.1984), *pet. for review denied* (Minn. Feb. 6, 1985), this court affirmed the granting of custody to the mother where the father physically abused his spouse and continued to threaten her after the separation. The father was found to be signifi-

cantly emotionally disturbed, "likely to act out his anger physically and [to pose] a potential threat to his son." *Id.* at 491. Here there was no finding of emotional disturbance. More importantly, *Stangel* did not require a finding of parental unfitness, only a choice of which natural parent could better care for the child. *See id.*

We recognize the broad discretion of the trial court in determining custody matters. Appellant, however, was entitled to a presumption of parental fitness. He could not be denied custody on the basis of evidence sufficient only to establish a preference for another natural parent.

The trial court did not have discretion to consider factors extraneous to the parent-child relationship, *Kotila v. Kotila,* 351 N.W.2d 661, 663 (Minn.Ct.App.1984), nor to rely heavily on an alcoholic condition not shown to have an effect on that relationship. The remaining evidence did not support a determination that appellant was unfit to have custody.

### DECISION

The trial court abused its discretion in determining that custody should be placed with the grandparents rather than the natural father.

Reversed.