**Deborah DURKIN, petitioner,
Respondent,**

v.

**Kathryn HINICH, Appellant,**

**In re the Matter of S.A.H.**

**No. C6–88–876.**

Court of Appeals of Minnesota.

Nov. 15, 1988.
Review Granted Jan. 26, 1989.

Wright S. Walling, Jody Ollyver DeSmidt, Curtin, Mahoney, Cairns & Walling, P.A., Minneapolis, for respondent.

Deborah V. Kraus, J. Oakes & Associates, St. Paul, for appellant.

Considered and decided by SCHUMACHER, P.J., and FOLEY and HUSPENI, JJ., without oral argument.

**OPINION**

FOLEY, Judge.

Kathryn Hinich appeals from the judgment awarding custody of the minor child S.A.H. to respondent Deborah Durkin. We affirm.

**FACTS**

S.A.H. was born January 21, 1983. Hinich and P.M. Johnson are the parents of S.A.H. They are not married. A prior court order in a paternity adjudication granted custody of S.A.H. to Hinich.

Prior to S.A.H.'s birth, Hinich was unsure about keeping the child. She had not made a decision when the baby was born,

and S.A.H. was placed in foster care for approximately six weeks. At that time, Hinich decided to keep the child.

During scheduled hospital checkups, a nurse practitioner who observed Hinich and S.A.H. expressed concern about Hinich's ability to interact with the child. She attempted by nonverbal cues to help them interact, but Hinich did not respond. Hinich missed the last checkup and did not complete the child's immunizations.

Over time Johnson became concerned about Hinich's ability to care for S.A.H. He received calls from Hinich informing him that S.A.H. had fallen from a grocery cart, had swallowed vitamins, or had broken her arm. As a result of his concern, he talked with Durkin, a family friend, about adopting the child.

At one point, Hinich offered to sell the child to Johnson for $100,000. When told this was not possible, she informed Johnson that she would give S.A.H. up for adoption. Johnson accompanied Hinich to an adoption agency but did not consent to adoption.

In September 1986, Johnson received a call indicating that Hinich no longer wanted the child. Johnson then placed S.A.H. in Durkin's care with the acquiescence of Hinich and her family.

Immediately after S.A.H. was placed in Durkin's home, Durkin became concerned about the child's behavior. S.A.H. did not know how to hug or kiss and did not react to common occurrences in a normal fashion. As a result, Durkin had the child evaluated by a psychologist, Dr. Sandra Hewitt.

Dr. Hewitt's first evaluation found that S.A.H.'s emotional development was extremely primitive and that there was no evidence of a clear bond with a primary caretaker. It was her opinion that a return to the mother would result in significant harm to the child. She recommended long-term therapy for S.A.H.

Johnson filed a dependency and neglect petition in juvenile court in February 1987. The juvenile court continued custody in Durkin pending the outcome of the pro-

ceeding. In March 1987, Durkin filed a custody petition in family court. The juvenile and family court matters were consolidated in October 1987.

Other individuals investigating the situation recommended that S.A.H. remain in Durkin's custody. Doug Unze, a child protection social worker, found that Hinich was unable to focus on S.A.H., and it was his opinion that it would be harmful to the child to return to Hinich.

Hinich's condition was described by a treating psychiatrist, Dr. Lee Beecher, as borderline personality disorder with episodic psychotic decompensations and an ongoing depression.

Both Hinich and Durkin were evaluated by a psychologist, Dr. Linda Burkett, in conjunction with a family court services investigation. Dr. Burkett found Durkin to be a well-functioning person who was capable of being an effective caregiver for S.A.H. The findings indicated that Hinich was confused about herself and lacked the necessary emotional and psychological resources to enable her to function as the primary caretaker.

S.A.H. has demonstrated great improvement since placement with Durkin and now has a primary relationship with Durkin. S.A.H. has made progress in therapy and has improved her behavior and interaction with other children and adults.

The trial court determined that S.A.H. had been integrated into Durkin's family with Hinich's consent; that custody with Hinich endangered the child's emotional and physical health; that return of the child to Hinich would be damaging to the child's emotional well-being; that the advantages of a change of custodian outweighed any disadvantages; and that it was in the best interests of the child to be placed in the legal and permanent physical custody of Durkin.

## ISSUES

1. Did the trial court err in awarding custody to Durkin?

2. Was it proper for the trial court to make a custody determination and dismiss

the dependency and neglect petition when both petitions were pending before the court?

## ANALYSIS

1. Hinich argues that the juvenile court failed to observe her procedural rights when it continued custody of S.A.H. with Durkin in the February 1987 order. No post-trial motions were made on this question, and we will not address it on appeal. Issues raised on appeal that were not raised in the trial court need not be considered by the appellate court. *Benedict v. Benedict*, 361 N.W.2d 429, 431–32 (Minn. Ct.App.1985).

■ The trial court has broad discretion to determine matters of custody. *In re the Welfare of P.L.C. and D.L.C.*, 384 N.W.2d 222, 226 (Minn.Ct.App.1986). Our review of custody determinations is limited to whether the trial court abused its discretion by making findings unsupported by the evidence or by improperly applying the law. *Pikula v. Pikula*, 374 N.W.2d 705, 710 (Minn.1985). The trial court's findings must be sustained unless clearly erroneous. *Id.*

■ Durkin's custody petition was brought under Minn.Stat. § 518.156, subd. 1(b) (1986). In making a change in a prior custody order, the provisions of Minn.Stat. § 518.18(d) (1986) must be applied. Section 518.18(d) states that the court

shall not modify a prior custody order unless it finds, upon the basis of facts that have arisen since the prior order or that were unknown to the court at the time of the prior order, that a change has occurred in the circumstances of the child or the custodian and that the modification is necessary to serve the best interests of the child. In applying these standards the court shall retain the custodian established by the prior order unless:

(i) the custodian agrees to the modification;

(ii) the child has been integrated into the family of the petitioner with the consent of the custodian; or

(iii) the child's present environment endangers the child's physical or emotional health or impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

■ The party moving for a change in custody has the burden of establishing that there has been a significant change of circumstances from the time the original or amended custody order was issued. *Nice–Peterson v. Nice–Peterson*, 310 N.W.2d 471, 472 (Minn.1981). Durkin has established a significant change in circumstances.

Hinich has shown an inability to care for S.A.H. and at times has indicated that she no longer wanted to care for the child. Her psychological evaluation showed that she did not have an adequate understanding of the child's needs.

Hinich initially acquiesced in the placement of S.A.H. with Durkin. At that time, S.A.H. showed no clear bond with a primary caretaker. S.A.H. now, without prompting, refers to Durkin as "Mommy" or "Mom". S.A.H. attends pre-school and goes to church with Durkin and has been integrated into Durkin's family.

Furthermore, the evidence in this case supports the trial court's finding that the environment with Hinich endangers the child's physical and emotional health, and that a change of custody is advantageous to S.A.H. Dr. Hewitt described the child's emotional development as a result of her environment with Hinich. S.A.H.'s therapist, Dr. Georganne Farseth, noted a correlation between the frequency of visits with Hinich and immature, regressive behavior by S.A.H. The experts investigating this situation were in agreement that S.A.H. has benefitted from the environment provided by Durkin. It was the opinion of Dr. Hewitt that if S.A.H. were removed from her relationship with Durkin, her progress would be jeopardized.

The trial court's decision awarding custody to Durkin is not clearly erroneous and is necessary to serve the best interests of S.A.H. under Minn.Stat. § 518.18(d).

No

█ The trial court's decision is also consistent with the standard established by the Minnesota Supreme Court in deciding custody disputes between a parent and a third person. The first principle is that a parent is entitled to custody unless it clearly appears that he or she is unfit, has abandoned his or her right to custody, or extraordinary circumstances require that he or she be deprived of custody. *Wallin v. Wallin,* 290 Minn. 261, 264, 187 N.W.2d 627, 629 (1971). The second principle is that any custody determination be consistent with the best interests of the child. *Id.* The best interest of the child is the overriding consideration in custody decisions. *Id.* at 265, 187 N.W.2d at 630. *See also In re Custody of N.M.O.,* 399 N.W.2d 700, 703 (Minn.Ct.App.1987).

The trial court's decision to award custody to the third party follows this standard, and the findings indicate that the decision is consistent with the best interests of the child.

█ 2. Hinich argues that it was improper for the trial court to make a custody determination and dismiss the dependency and neglect petition when both petitions were pending before the court. She argues that by dismissing the dependency and neglect petition, the court avoided the stated policy of Minn.Stat. ch. 260 (1986) to reunite the family whenever possible.

Proceedings for permanent custody involve different issues from dependency and neglect proceedings. *In re the Custody of E.A.Q.D. and T.L.D.,* 405 N.W.2d 262, 264 (Minn.Ct.App.1987). Here, Durkin is seeking permanent custody of S.A.H., not termination of Hinich's parental rights. Permanent custody and termination of parental rights are not mutually exclusive concepts. *Id.*

Although the purposes of Minn.Stat. ch. 260 may seem inconsistent with an individual's desire to obtain permanent custody, the best interest of the child is the primary consideration. *Id. See also In re Welfare of J.J.B.,* 390 N.W.2d 274, 279 (Minn.1986) (child's best interest is primary consideration in various placement procedures, "whether temporary or permanent").

The evidence in this case supports the trial court's determination that placement with Durkin is in the best interests of S.A.H.

## DECISION

AFFIRMED.

HUSPENI, J., dissents.

HUSPENI, Judge (dissenting).

I respectfully dissent and would remand this matter to the trial court for reinstatement of the neglect and dependency petition.

I agree with the majority that the best interest of S.A.H. must be the primary concern. Future reunification with appellant may, in fact, be in S.A.H.'s best interest. However, our affirmance assures that it will be exceedingly difficult for future reunification to occur. Under the present custodial arrangement, appellant has not only lost custody of S.A.H. pursuant to provisions of Minn.Stat. § 518.18 (1986), but will be required to meet the rigorous requirements of that statute in order to effect reunification. The provisions of section 518.18 serve an important purpose in preserving the stability and security of custodial arrangements in dissolution cases. However, in the present circumstances, where custody is being transferred from a natural parent to a third party, I submit the section 518.18 provisions conflict with those of Minn.Stat. § 260.012 (1986) which require that the court "ensure that all reasonable efforts are made to reunite a child with the child's family at the earliest possible time, consistent with the safety of the child and the public."

There appears to be no dispute that father's advanced age prohibits him from seeking custody of S.A.H. In addition, there is ample support in the record for the trial court's determination that custody of S.A.H. be with someone other than her mother at this time. However, I believe the best interest of S.A.H. will be served by assuring that the trial court include within its determinations on custody the concerns expressed in a chapter 260 petition, especially the concern that reunifica-

tion of S.A.H. with her natural parent remain an available future goal.

Finally, I submit the majority's reliance on *In re the Custody of E.A.Q.D. and T.L.D.*, 405 N.W.2d 262 (Minn.Ct.App.1987) is misplaced. In that case, the petition brought pursuant to Minn.Stat. § 518.156 (1986) was dismissed by the trial court when it determined that the "provisions in Chapter 260 clearly apply." *Id.* at 263. This court agreed with appellants that "dismissal of the [section 518.156] petition was unnecessary" and remanded to the trial court for transfer of the section 518.156 petition to juvenile court and "joinder of the contested issues in one court at one time." *Id.* at 264–65.

In remanding, the *E.A.Q.D.* court was sensitive to the "procedural dilemma confronting the trial court" in proceeding under both the section 518.156 and the chapter 260 petitions at one time. *Id.* at 265. There may be procedural dilemmas in this matter also. Of overriding concern, though, should be assurance that the parties have an opportunity to be heard on all issues which may impact on the best interests of S.A.H. The *E.A.Q.D.* court preserved that right by requiring that both petitions be considered. In contrast, the trial court in this matter heard evidence on only the section 518.156 petition.

Our affirmance of this custody arrangement guarantees that appellant will regain custody of S.A.H. only by meeting the section 518.18 requirements. Those requirements are uniquely applicable to custody disputes between two parents and are usually far more difficult to meet than chapter 260 neglect and dependency goals would be. I believe both the rationale of *E.A.Q.D.* and the legislative intent embodied in chapters 518 and 260 would be served by resolving this custodial dispute through consideration of both petitions and all the evidence which might be presented under each of them. I am certain that the best interests of S.A.H. would be served by doing so.