## IN RE PETITION OF BIANCA NISKANEN TO ADOPT DARRAL JOHN TURCOTTE AND ANOTHER.

223 N. W. 2d 754.

August 16, 1974—No. 44814.

*Friedman & Friedman, Newton S. Friedman,* and *Larry M. Nord,* for appellant.

*Knetsch & Bang* and *James J. Bang,* for respondents Hillman.

*Eckman, Mellum & Bieter* and *Michael S. Mellum,* for respondents Hagensen.

*Warren Spannaus,* Attorney General, *Keith M. Brownell,* County Attorney, and *Thomas F. Sjogren,* Assistant County Attorney, for respondent welfare department.

*Courtney, Gruesen & Petersen* and *Thomas W. Gruesen,* guardian ad litem, for the children.

Heard before Sheran, C. J., and Peterson, Kelly, and Yetka, JJ., and considered and decided by the court.

PER CURIAM.

This appeal brings before us the actions of the St. Louis County Juvenile Court in considering three competing petitions for adoption of two young children, Darral and Tina Turcotte. The children became available for adoption after their natural mother voluntarily terminated her parental rights and the natural father's rights were adjudicated terminated. Petitioner Bianca Niskanen is the children's natural maternal grandmother, while petitioners Charles and Julie Hillman have served as the foster parents of Darral and petitioners Robert and Grace Hagensen as the foster parents of Tina.

With a history of emotional problems and institutionalizations, the natural parents failed to provide a stable home for Darral and Tina. Because of the familial problems, both children were placed in other homes early in their lives. Darral was born on December 17, 1969, and first was placed by welfare authorities in a day care home for a period; since his removal from his parents by court order in November 1971, he has been in the Hillmans' care. Tina, who was born on November 1, 1970, was first placed with the Hagensens as a day care child in December 1970 and has been with them as a foster child continuously since June 1971. The rights of the natural parents were terminated in October 1972, and they are now divorced.

Following the termination proceedings, petitions to adopt both children were filed by Mrs. Niskanen and the Hillmans, while

a petition to adopt only Tina was filed by the Hagensens. The trial court held a consolidated hearing to consider the various petitions. After a lengthy hearing, the court issued orders granting the Hillman petition for Darral and the Hagensen petition for Tina and denying the Niskanen petition in all respects. Although the court's orders were not wholly in accord with the original St. Louis County Welfare Department recommendation that both children be placed with the Hillmans, the orders have not been contested by welfare authorities. This appeal from the orders is brought only by Mrs. Niskanen.

Mrs. Niskanen's primary claim before us is that the trial court erred in granting the Hillman and Hagensen petitions while denying hers. Where matters involving the best interests of children are in issue, we necessarily give weight to the trial court's opportunity to see the interested parties and their witnesses and to consider their testimony in light of its observations; the test applied on review is whether the trial court abused its discretion. See, e. g., In re Petition of Jordet, 248 Minn. 433, 80 N. W. 2d 642 (1957). Since parental rights have been terminated, no presumption such as that in favor of a natural parent is applicable to any of the petitioners here. See, In re Petition of Alsdurf, 270 Minn. 236, 133 N. W. 2d 479 (1965); In re Petition of Parks, 267 Minn. 468, 127 N. W. 2d 548 (1964). Under all the circumstances of this case, we cannot conclude that the trial court abused its discretion in granting the Hillman and Hagensen petitions and denying that of Mrs. Niskanen.

The record contains considerable evidence offering support for the trial court's determination that adoption by Mrs. Niskanen would not be in the children's best interests. Among the factors which the court might have considered were Mrs. Niskanen's status as a widow, and thus a single parent, above 60 years of age; her past difficulties in raising her own children, including the mother of these two children; and the possible opportunity for a continued unwholesome contact between the natural mother and the two children which Mrs. Niskanen's position

as maternal grandmother would have afforded. On the other hand, there was a good deal of evidence demonstrating that both the Hillmans and the Hagensens had performed competently as foster parents and had the means, ability, and desire to rear the children as their own. We are not persuaded that the trial court's decision to make permanent the children's status in the only homes they have ever really known constituted an abuse of discretion or was in any way opposed to their best interests.

Although appellant raises several other points, we find little merit in them. While detailed findings by the trial court are indubitably of assistance, appellant should have complained of their absence to the trial court and cannot raise the lack of findings for the first time on appeal, particularly where no sound purpose would be served by a remand. Nelson v. Nelson, 291 Minn. 496, 497, 189 N. W. 2d 413, 415 (1971). We find no significant substantiation of appellant's claim of bias and misconduct toward her on the part of welfare authorities. Nor is there reversible error in any of the other points raised by appellant.

Finally, we note that upon adoption the child becomes the legal child of his adoptive parents and all rights and responsibilities between the child and his natural family are severed. Minn. St. 259.29.[1] Appellant has requested visitation rights, both from the

---

[1] Minn. St. 259.29. "Upon adoption, such child shall become the legal child of the persons adopting him, and they shall become his legal parents with all the rights and duties between them of natural parents and legitimate child. By virtue of such adoption he shall inherit from his adoptive parents or their relatives the same as though he were the legitimate child of such parents, and in case of his death intestate the adoptive parents and their relatives shall inherit his estate as if they had been his natural parents and relatives in fact. After a decree of adoption is entered the natural parents of an adopted child shall be relieved of all parental responsibilities for such child, and they shall not exercise or have any rights over such adopted child or his property. The child shall not owe his natural parents or their relatives any legal duty nor shall he inherit from his natural parents or kindred. Notwithstanding any other provisions to the contrary in this section, the adoption of a child by his step-parent shall not in any way change the status

trial court and from this court pending appeal, and again urges the denial of visitation rights as error upon this appeal. The clear implication of our statute, however, is that upon adoption the continuation of contact with a natural grandparent is a matter wholly within the discretion of the adoptive parents. See, In re Johnson, 210 Kan. 828, 504 P. 2d 217 (1972).

Affirmed.

YETKA, JUSTICE (concurring specially).

I concur in the result reached by the majority because under the rules followed by this court on appellate review there are no grounds to reverse the trial court. This court cannot be a trier of fact.

However, while I am convinced that neither the common law nor the Minnesota statutory law requires that visitation rights be given the natural grandparents of a child held by adoptive parents, I believe the situation calls for some legislative action.

I fully understand that in many, if not most, adoptions it is deemed wise that the natural parents and grandparents have no knowledge as to who the adoptive parents are. However, in a situation such as this, where the natural parents and grandparents do in fact know where their children are and who has adopted them, I would think it appropriate that the juvenile court have authority as a part of its adoption decree to include a provision giving the grandparents visitation rights. There is no showing whatever that Bianca Niskanen does not truly love her grandchildren, and it is obvious that she fears losing all contact with them. The record shows the adoptive parents desired to deny her visitation rights completely. While the trial court made no findings in determining that Mrs. Niskanen should not be permitted to adopt her grandchildren, it may well have been influenced by her age and by evidence that she "had had trouble raising her own two children." The former reason has some validity, but the latter from the record does not. Many parents

of the relationship between the child and his natural parent who is the spouse of the petitioning step-parent."

love, respect, and do everything possible to raise their children properly, only to have them go wrong. I see nothing in the record which would justify finding Mrs. Niskanen at fault for what happened to her daughter and her daughter's marriage. Grandparents sometimes are as much attached to their grandchildren as to their own children. I find the end result of this decision, which will have the practical effect of denying to a maternal grandparent all contact with her grandchildren, almost barbaric and one literally crying out for some legislative reform.

TODD, JUSTICE (concurring specially).
I join in the concurring opinion of Mr. Justice Yetka.

MACLAUGHLIN, JUSTICE (concurring specially).
I join in the concurring opinion of Mr. Justice Yetka.