IN RE WELFARE OF DAVID DOEGE.

240 N. W. 2d 562.

April 2, 1976—No. 45744.

*Melvin B. Goldberg, James P. Cullen, Jeff W. Lambert,* Legal Assistance to Minnesota Prisoners, and *C. Paul Jones,* State Public Defender, for appellant.

*William B. Randall,* County Attorney, and *John W. Kanniainen, Neil F. Scott,* and *Kathleen Gearin,* Assistant County Attorneys, for respondent.

*Mary Louise Klas,* for mother of child.

Heard before Otis, Peterson, and Yetka, JJ., and considered and decided by the court en banc.

PETERSON, JUSTICE.

Daniel Doege appeals pursuant to Minn. St. 260.291 from the findings and order of the Ramsey County Juvenile Court finding his son, David Doege, neglected and dependent and transferring temporary legal custody of the child to the Ramsey County Welfare Department for placement in a foster home, such temporary custody to be reviewed at a later date. Appellant contends that the court below erred in finding David Doege to be a neglected and dependent child with respect to appellant and in determining that it was in the best interests of the child to be placed in a foster home and not with the paternal grandmother. We affirm.

David Doege was born on September 26, 1973, and is the only child of appellant and Marianna Doege. On October 23, 1973, approximately 1 month after the birth of his son, appellant was incarcerated in the St. Cloud Reformatory for Men for an intentional felony unrelated to his family. He is indigent and has re-

mained continuously in custody since that date but will be released no later than June 11, 1977.

On July 12, 1974, David Doege, who had been in the temporary care of his maternal grandmother, was returned to the care of his mother. When the child was returned to the care of his mother, he was in good health and uninjured. From July 12, 1974, through July 15, 1974, the child was in the immediate presence or under the immediate control of his mother. On July 15, 1974, David Doege was brought to Children's Hospital in Ramsey County by his mother, Marianna Doege, with serious injuries including head bruises and several broken bones in his arms and legs. His mother gave the attending physicians no rational explanation for these injuries. The juvenile court concluded that all the evidence indicated that the battering was either administered by or took place in the presence of his mother; and it further found that the mother had severe emotional, mental, and drug-abuse problems and had failed to provide the child with necessary care at various times prior to the battering.

Upon learning of these injuries to his child, and during the 4 months following them, appellant arranged with the prison authorities to visit his son on four separate occasions. He thereafter contacted his mother and made arrangements for his parents to assume care and custody of David while he was incarcerated.

In December 1974 a hearing was held in response to a petition filed by the Ramsey County Welfare Department alleging that David Doege was a neglected and dependent child. In approving the petition and placing David Doege under the temporary custody of the welfare department for placement in a foster home, the juvenile court judge stated:

"After the long course of marginal care provided by Marianna Doege and the battering incident, Daniel Doege, father of David Doege, proposed that Mrs. Sylvester Doege, the paternal grandmother of David, assume David's care. Mrs. Sylvester Doege lives

with eight other persons in a house that has six rooms in which to live in Stearns County. Mrs. Sylvester Doege has a gross income of $8,500.00. Marianna Doege intends to remain in St. Paul once her child returns, and prior to return wants visitation rights; and does not have good relations with Mrs. Sylvester Doege. A psychiatric social worker, Malcolm Bolton, testified that the Sylvester Doege home would be an appropriate placement for David Doege but admitted on cross-examination that there were some problems he could foresee with this custodial arrangement. The Court finds that his testimony was ambivalent and that the best interests of David Doege would not be served by placement with the already overburdened paternal grandparents."

It is this finding and the finding of neglect and dependency with respect to the father that is challenged by Daniel Doege.[1]

Appellant contends that the above facts do not establish that he himself has neglected his child and that he should therefore remain the natural guardian of his son, with the power to control his son's custody pending his own release from prison. The juvenile court found, however, that "Daniel Doege, as the result of an intentional act, is incarcerated in the State Reformatory for Men, has no realistic plans for his child, has no assets, and cannot himself provide proper parental care or protection for his child."

Incarceration alone, as we have held, is not sufficient to constitute abandonment,[2] but we have also held that the fact of imprisonment may be considered along with other factors in assessing the type of care and concern a parent has provided a child. In re Welfare of Staat, 287 Minn. 501, 178 N. W. 2d 709 (1970). The incarcerated father in this case has not abandoned his son

---

[1] No appeal is taken by the mother from this finding, and in view of the child's battering and the mother's history of emotional instability and chemical abuse, the finding of neglect is amply justified as to the mother.

[2] See, Minn. St. 260.015, subd. 10(a).

and has indicated his continuing interest in the welfare of his son by letters, visits, and these proceedings. By committing an intentional felony and going to prison, however, the father has in fact deprived his son of proper parental care in view of the acknowledged inability of Marianna Doege to provide such care. It was thus within the discretion of the juvenile court to determine that David Doege was neglected as defined in Minn. St. 260.015, subd. 10(b), and dependent as defined in § 260.015, subd. 6(d). While incarceration is not specifically listed in the latter statute, it is clear that the forced physical absence of Daniel Doege prevents him from offering necessary parental care to his son much as would any mental or physical disability. We are thus persuaded that, in the special circumstances of this tragic case, it was not error for the juvenile court to find David Doege neglected by his father and mother and dependent.

Appellant argues further that even if the finding of past neglect and dependency was proper it would, nevertheless, be in the best interests of this young child to be placed with his paternal grandmother until such time as his father is released from incarceration and able to assume full parental responsibility. The best interests of the child are indeed the chief consideration, "superior to the desires of either parent," Bennett v. Bennett, 277 Minn. 227, 229, 152 N. W. 2d 187, 189 (1967), and we are convinced that the juvenile court, applying this crucial test, did not abuse its discretion in placing David Doege in a temporary foster home until such time as either Daniel or Marianna Doege establishes a proper environment and adequate parental supervision for their young child. The best interests of David would not be served by removing him from the foster home, where he has lived since discharge from the hospital and where he has received good care, in order to place him with his paternal grandmother for the interim preceding the release of his father from prison.

It is important to note that only temporary custody is involved, not a termination of the parental rights of either Daniel or

Marianna Doege. Our decision here implies no qualification of the traditional preference to be accorded prospective custodians who are also blood relatives of the child. See, State, by St. Louis County Welfare Dept. v. Niemi, 284 Minn. 225, 169 N. W. 2d 758 (1969); State ex rel. Waldron v. Bienek, 155 Minn. 313, 193 N. W. 452 (1923); but cf. In re Petition of Niskanen, 301 Minn. 53, 223 N. W. 2d 754 (1974). We hold only that the action of the juvenile court in the circumstances of this case was neither arbitrary nor an abuse of its sensitive discretion.

Affirmed.

MR. JUSTICE SCOTT took no part in the consideration or decision of this case.