**In the Matter of the WELFARE OF R.A.N., a/k/a R.A.W., a minor child.**

**No. C8–88–1575.**

Court of Appeals of Minnesota.

Jan. 24, 1989.

Terry L. Mitchell, Minneapolis, for appellant.

Michael J. Thompson, Asst. County Atty., Meeker County Courthouse, Litchfield, for Meeker County Social Service Dept.

Brian M. Olsen, Cokato, for respondent, child.

Ann M. Gustafson, Willmar, for respondent, maternal grandparents.

Heard, considered and decided by NIERENGARTEN, P.J., and LANSING and FLEMING *, JJ.

### OPINION

LANSING, Judge.

Ivan and Donna Wersal appeal from an order which denies them visitation rights with their grandson, R.A.N.

### FACTS

R.A.N., whose birthdate is May 29, 1984, was the third child born during the marriage of Cynthia and Curtis Newberg. Several months after his birth, Cynthia Newberg told Curtis Newberg that he was not R.A.N.'s biological father, and in January 1986, at his request, Cynthia Newberg and R.A.N. left the family home. The Newbergs dissolved their marriage in March 1986 and Curtis Newberg retained sole custody of the two older children, now nine and eleven years old. Daniel Wersal was later adjudicated R.A.N.'s father and Wersal obtained shared legal custody of

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

R.A.N. with Cynthia Newberg, who retained sole physical custody.

After the dissolution, Cynthia Newberg and R.A.N. lived in several different residences, including periodic stays in Curtis Newberg's home. In the summer of 1987, as part of a reconciliation and planned remarriage, they moved permanently to Curtis Newberg's home.

On September 18, 1987, Daniel Wersal shot and killed Cynthia Newberg in the Newberg's home. R.A.N., then three years old, and his eight-year-old half-brother were present during the shooting. Daniel Wersal was indicted for first degree murder and confined to the Meeker County jail to await trial.

The juvenile court made a finding that R.A.N. was temporarily dependent and neglected and transferred his custody to the Meeker County Social Services for foster care placement with Curtis Newberg. Ivan and Donna Wersal, R.A.N.'s paternal grandparents, requested that R.A.N. be placed with his paternal aunt and uncle and that they be allowed visitation. After a hearing, the court denied their motions pending the outcome of Daniel Wersal's criminal trial.

Daniel Wersal pleaded guilty to second degree murder and was committed to the Commissioner of Corrections for 22 years, 5 months. In conjunction with the plea, Wersal voluntarily terminated his parental rights to R.A.N. The juvenile court transferred R.A.N.'s legal custody to the Minnesota Commissioner of Human Services, but R.A.N. remained with Curtis Newberg, who obtained a foster-care license. In July 1988 Curtis Newberg formally petitioned to adopt R.A.N., and in August the trial court granted the petition.

Before the adoption petition was granted, Ivan and Donna Wersal repetitioned for visitation rights and access to Meeker County Social Service records on the status of R.A.N. The court denied these motions and because R.A.N. had been placed with Curtis Newberg also dismissed the dependency and neglect petition.

The trial court held, as a matter of law, that Ivan and Donna Wersal had no common law or statutory right to visitation with R.A.N. The court did not reach the issue of whether visitation with the Wersals would be in R.A.N.'s best interests because it concluded that absent a change in Minn.Stat. § 257.022 (1986) Ivan and Donna Wersal were not permitted visitation. Ivan and Donna Wersal appeal the denial of visitation, contending that the best-interests-of-the-child standard should be determinative when deciding whether to allow grandparental visitation.

## ISSUE

Did the trial court err in holding that paternal grandparents, whose son has voluntarily terminated his parental rights, do not have visitation rights with a grandchild who has been adopted by the mother's former husband?

## ANALYSIS

Under the common law when a child was adopted, continued contact between a natural grandparent and the child was a matter completely within the discretion of the adoptive parents. *See In re Niskanen*, 301 Minn. 53, 57, 223 N.W.2d 754, 757 (1974) (Yetka, J., concurring specially). In *Niskanen* a maternal grandmother sought visitation after her daughter voluntarily terminated her parental rights, the court adjudicated termination of the father's parental rights, and an unrelated party adopted the child. Three specially concurring justices requested legislative action to ameliorate the harshness of the common law rule that grandparents' visitation rights are only derivative through their children. *Niskanen*, 301 Minn. at 57, 223 N.W.2d at 757.

In response the legislature enacted a statute which provides for grandparent visitation in three specific instances: 1) when the parent who is their child is deceased, 2) when the parent's marriage is dissolved, and 3) when the child has resided with the grandparents for a period of 12 months or more. Minn.Stat. § 257.022 (1976). The statute does not apply if the child is adopted by someone other than a stepparent or grandparent. Minn.Stat. § 257.022,

subd. 3. This statute has not been cited or interpreted by any appellate court, nor has it been substantially changed since its enactment.

The trial court interpreted § 257.022 to give grandparents visitation rights only in those situations specifically listed. The court held that none of the provisions of § 257.022 apply in this case because Daniel Wersal is not deceased, Daniel Wersal and Cynthia Newberg were not married, and R.A.N. did not live with Ivan and Donna Wersal for 12 months or more. The court also noted that Curtis Newberg, at that time a prospective adoptive parent, was not R.A.N.'s stepparent because he was not married to Cynthia Newberg when she died. Because Newberg was not a stepparent, under subdivision 3 his adoption of R.A.N. would preclude application of the statute.

We agree with the trial court's analysis and application of § 257.022. "[W]hen a statute speaks with clarity in limiting its application to specifically enumerated subjects, its application shall not be extended to other subjects by process of construction." *Martinco v. Hastings*, 265 Minn. 490, 495, 122 N.W.2d 631, 637 (1963). On the facts of this case the § 257.022 provisions creating exceptions from the derivative rights approach for grandparent visitation cannot be expanded by this court to include visitation of R.A.N. Whether or not Curtis Newberg is R.A.N.'s stepparent is immaterial to this analysis because no visitation rights are created by § 257.022, and cannot be divested by later non-stepparent adoption.

Because Ivan and Donna Wersal do not have a statutory right to visitation, they may only claim a common law derivative right to visitation with R.A.N. However Daniel Wersal's voluntary termination of his parental rights determines this claim because upon termination

[a]ll rights, powers, privileges, immunities, duties, and obligations, including any rights to custody, control, visitation, or support existing between the child and parent shall be severed and terminated and the parent shall have no standing to appear at any further legal proceeding concerning the child.

Minn.Stat. § 260.241, subd. 1 (1986).

The statutory effect of Curtis Newberg's adoption of R.A.N. is similar:

[a]fter a decree of adoption is entered the natural parents of an adopted child shall be relieved of all parental responsibilities for the child, and they shall not exercise or have any rights over the adopted child or the child's property. The child shall not owe the natural parents or their relatives any legal duty * * *.

Minn.Stat. § 259.29, subd. 1 (1986). Because Daniel Wersal has no individual visitation right with R.A.N., Ivan and Donna Wersal have no derivative right to visitation.

Ivan and Donna Wersal contend that despite a lack of common law or statutory rights, the best interests of the child should be determinative in deciding whether or not to allow grandparental visitation. Other states have enacted legislation which determines grandparental visitation rights on a more subjective basis, using the best-interests-of-the-child standard as a guide-post. Zablotsky, *To Grandmother's House We Go: Grandparent Visitation After Stepparent Adoption*, 32 Wayne L.Rev. 1, 6–7 (1985). Although there may be good reasons to support this approach, the Minnesota Legislature has, through enactment of § 257.022, created a nonderivative grandparent's visitation right only in three specified situations. We recognize that statutes affecting the welfare of children most often have as a touchstone the best interests of the child. *See, e.g.,* Minn.Stat. §§ 518.17, .175 (1986). We similarly recognize the public policy reasons that support a denial of visitation to uphold the independence and decision-making integrity of the newly created family unit.

In providing a limited nonderivative visitation right, the legislature apparently balanced the compelling considerations in favor of the new family unit. We have no question that this balance works a substantial hardship on R.A.N.'s paternal grandparents. Because R.A.N.'s best interests were not required to be considered, we do

not know the effect on R.A.N. We can easily envision situations such as this where deprivation of visitation is detrimental to the child.

However the *Niskanen* case presented a similar curtailment of visitation rights. The legislature, in responding to the court's request for legislative reform, chose not to carve out a right for grandparent's visitation where parental rights are terminated. Similarly they elected not to provide a standard which would permit a case-by-case analysis of the child's best interest. Absent a change in the legislature's determination of how these rights should be balanced, the best interests of the child will not be the paramount or determinative consideration.

## DECISION

The trial court did not abuse its discretion by denying appellants' motion for visitation.

AFFIRMED.