In re the Matter of Nancy Jean KULLA,
Petitioner, Appellant,

v.

Deborah McNULTY, et al., Respondents.

No. CX–90–2629.

Court of Appeals of Minnesota.

June 18, 1991.

Review Denied Aug. 29, 1991.

M. Sue Wilson, Christine N. Howard, Wilson & Binder, Minneapolis, for appellant.

Michael D. Dittberner, Kathleen Worner Kissoon Law Office, Bloomington, Suzanne Born, Minneapolis, for respondents.

Paul L. Ettelbrick, Legal Director, Lambda Legal Defense and Educ. Fund, Inc., New York City, Maria Gil de la Madrid, National Center for Lesbian Rights, San Francisco, Cal., for amici curiae.

Considered and decided by HUSPENI, P.J., and SHORT and MULALLY,* JJ.

## OPINION

EDWARD D. MULALLY, Acting Judge.

Appellant brings this appeal from the dismissal of her petition seeking visitation with the daughter of respondents Deborah McNulty and Joseph J. Marrone. Appellant filed her petition pursuant to Minn. Stat. § 257.022, subd. 2b (Supp.1989). She contends the trial court erred by finding that appellant had failed to produce prima facie evidence on each of the statutory factors. We affirm.

## FACTS

Appellant Nancy Jean Kulla appeals from an order vacating a prior family court referee order, and denying appellant's petition for visitation with the minor child of respondents Deborah McNulty and Joseph J. Marrone.

The referee had found that appellant had established a prima facie showing for visitation under the provisions of Minn.Stat. § 257.022, subd. 2b (Supp.1989), and she ordered the matter be continued for an evidentiary hearing. However, on motion for review, the district court concluded that appellant had failed to make a prima facie showing on the statutory factor that visitation would not interfere with the relationship between the respondents and the minor child. Respondents also challenged the constitutionality of the statute. The trial judge did not reach that issue.

The parties are in dispute over the facts at virtually every turn. The record is made up of competing affidavits submitted by and on behalf of the parties throughout the proceeding below. While the parties agree on a few contextual facts, even there they dispute the details and nature of their rela-

---

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

tionships to one another and to the minor child, K.R.M.[1]

Appellant and respondent, Deborah McNulty, were involved in a lesbian relationship from mid–1984 through mid–1987. Respondent, Joseph J. Marrone, is the father of the minor child, K.R.M. Appellant moved into McNulty's home in late September or early October 1985 after K.R.M.'s birth, and she moved out on March 16, 1988.

While residing in McNulty's home, appellant provided some care and supervision for K.R.M. while McNulty was away from home working as an airline attendant. In the late summer or early fall of 1987, McNulty and Marrone resumed their romantic relationship, and thereafter, appellant and McNulty's relationship deteriorated and was confrontational throughout the proceedings below.[2]

After appellant moved out of McNulty's home in March of 1988, she sought visitation with K.R.M. and was allowed a limited amount by respondents. Eventually, all visitation was denied. In early summer of 1988, appellant moved into the house next door to McNulty's. Appellant brought two legal actions in the fall of 1988: in one she sought custody of the minor child, K.R.M.; and in the other, she sought foreclosure on McNulty's home in satisfaction of an alleged mechanics' lien. The custody action was dismissed on December 2, 1988, and the mechanics' lien foreclosure was dismissed with prejudice, pursuant to stipulation on June 15, 1990.

Subsequent to the dismissal of appellant's custody action, the legislature enacted the present version of Minn.Stat. § 257.-022, subd. 2b (Supp.1989) which allowed third parties to obtain a visitation order if three statutory conditions were found to exist. Appellant commenced the present action on or about September 14, 1989.

In support of her petition for visitation, appellant incorporated by reference the affidavits she submitted in the earlier custo-

dy action. According to appellant's personal affidavits, she and McNulty were involved in a loving and committed relationship.

Appellant maintains that following the birth of K.R.M., she was the primary caretaker and that K.R.M. benefited from the security, stability and commitment of the relationship. Appellant maintains that K.R.M. expressed an obvious preference for her over McNulty.

In support of her petition for visitation, appellant submitted affidavits of several social acquaintances and members of her family, as well as a report from Jil Leverone, Ph.D., a licensed consulting psychologist. The relevant portions of Dr. Leverone's report provide:

> The bond between the two was evident. The sterility and awkwardness inherent in such a short, structured, supervised visit could have eliminated any contact or interest on K.R.M.'s behalf. It is evident that K.R.M. was shy at first, but warmed to Ms. Kulla as the two began to play with cars on the floor and continue a conversation. * * * Her involvement with Ms. Kulla reflected a comfort in the already-established bond still felt by both individuals.
>
> It is not possible to determine the exact nature of the relationship between Kulla and K.R.M. without further observation. * * * It could not be determined in the 40 minutes of supervised visitation—after two years of separation—the exact nature of the parent/child relationship. There was nothing in the content of the observed session to indicate that Ms. Kulla's relationship with K.R.M. was *not* parental. * * *
>
> Consequently, there appears to be no reason to recommend no visitation between K.R.M. and Ms. Kulla. * * * K.R.M.'s contact with Ms. Kulla should not be expected to interfere with K.R.M.'s relationship with her biological parents. Ms. Kulla has demonstrated in

---

**1.** The minor child will be referred to by her initials throughout this opinion. Where her name has been used in quoted material, her initials have been substituted.

**2.** McNulty and Marrone have since married.

interview and in supervised visit with K.R.M. that she is respectful of the rules and limits imposed by Ms. McNulty and Mr. Marrone. * * *

(Emphasis in original.)

The affidavits submitted by respondents are in conflict with those submitted by appellant. Deborah McNulty's personal affidavit begins by characterizing the proceedings brought by appellant as the acts of a mentally unstable person obsessed with having a relationship with K.R.M. and McNulty. McNulty contends she entered into the relationship initially out of curiosity as to the gay lifestyle, and although she was fond of appellant, McNulty asserts the extent of her feelings were that she found appellant merely amusing and enjoyable for a time.

McNulty asserts that following the birth of K.R.M., appellant pressured McNulty to let her move in and help take care of the baby while McNulty was working. She promised to pay McNulty $350 a month rent. After appellant moved into McNulty's home, appellant was hostile to the idea of any interaction between the natural father and K.R.M. McNulty also contends that appellant was called upon to care for K.R.M. never more than eight days a month, and that McNulty provided all the food and groceries.

The relationship between McNulty and appellant ended in late 1987. McNulty and Marrone began dating again. In early 1988, when McNulty suggested appellant find a place of her own, McNulty asserts appellant threatened various forms of legal action if McNulty prevented appellant from seeing K.R.M. McNulty also alleges that during this period, appellant stated she had urges of a sexual nature involving K.R.M. This prompted McNulty to change her work schedule in order to avoid leaving K.R.M. alone with appellant. Thereafter, when McNulty could not care for K.R.M., she was placed in the care of Marrone.

In March 1988, pursuant to McNulty's directive, appellant moved out. Appellant was allowed to visit K.R.M. three or four times, but because she was abusing her visiting privileges by demanding additional time, all visits were discontinued. McNulty asserts a pattern of harassment then began to develop. It took the form of repeated telephone calls and contacts pressing for extended visits with K.R.M., as well as unauthorized entry into the McNulty residence to visit K.R.M. In early summer 1988, appellant moved into the house next door to McNulty's residence. According to McNulty, appellant would watch for respondents to come and go with K.R.M. and then run outside to attempt to interact with the child.

McNulty asserts appellant used the mechanics' lien, filed earlier by appellant, as leverage to get respondents to allow appellant visitation with K.R.M. Following dismissal of appellant's earlier custody action, McNulty contends the harassment slowed but did not stop.

Respondents moved to dismiss appellant's petition for visitation, and submitted various affidavits from acquaintances of Deborah McNulty and appellant in support of their motion. The affidavits generally state the following. Appellant is an egocentric, domineering person who is obsessed with Deborah McNulty. Her obsession extended to McNulty's pregnancy and subsequently to K.R.M. following her birth. Appellant considered K.R.M. "her" child, and she always claimed to know better than anyone else what was best for K.R.M. Appellant attempted to usurp McNulty's parenting role. McNulty was the primary caretaker. McNulty was a very good parent and appellant was unstable and had a negative effect on K.R.M.

Appellant's petition for visitation came before a family court referee, who initially continued the action pending a visitation evaluation by the Department of Court Services. The Department report contained the following relevant observations and conclusions:

"(1) K.R.M. is not of sufficient age to express a visitation preference. (2) A form of visitation rights for Ms. Kulla may be in K.R.M.'s best interest because they have a close relationship and appear to enjoy each other's company. (3) In determining whether the [appellant] and

child had established emotional ties creating a parent and child relationship, Ms. Kulla reports that there was parent and child relationship while Ms. McNulty, the custodial parent, reports that there was not a parent and child relationship. Observation of K.R.M. with Ms. Kulla does not support the claim of a parent and child relationship in K.R.M.'s interactions with Ms. Kulla. They were indicative of a close relationship between friends but lacked the appearance of a bonding which would have been a necessary parent and child relationship."

\* \* \* \* \* \*

"Although a significant relationship seems to exist between Ms. Kulla and the child, the benefits the child would receive by having contact with Ms. Kulla would be outweighed by the effects, on the child, of the conflict between the parties. Because of the conflict, the amount of time of no regular contact between Ms. Kulla and the child and that a parent and child relationship having existed is not supported. I must recommend that visitation not be ordered."

The referee, on June 28, 1990, ordered that the matter be continued for an evidentiary hearing before a judge. The referee made the following relevant findings:

1. That by Court Order dated November 1, 1989, this matter was referred to the Department of Court Services for a visitation evaluation to determine whether or not the [appellant] shall have visitation with the minor child, K.R.M., taking into consideration the best interests of the child and whether or not the visitation would interfere with the parent-child relationship of respondent and the child.

\* \* \* \* \* \*

9. That it was the recommendation of Court Services that there not be visitation, as there was considerable conflict between the child's parents and the [appellant] which would have an adverse effect on the child.

Upon respondent's motion for review of the referee's order, the trial judge vacated the referee's order in its entirety and dismissed appellant's petition. The trial judge made the following relevant findings of fact:

5. That a child psychologist from the Department of Court Services conducted a visitation session with [appellant] and the minor child as part of its evaluation. It was the opinion of the psychologist that some form of visitation between [appellant] and the child may be in the child's best interests because the two appeared to have a close relationship.

6. That Referee Eagon, in her Order of July 9, 1990, found that there was a dispute as to whether or not there was a parent child relationship and also found that it was the recommendation of the Department of Court Services that there not be visitation due to the conflict between Respondents and [appellant] which would have an adverse effect on the child. Despite these findings, Referee Eagon found that [appellant] had established a prima facie showing for visitation and therefore, ordered that the matter be continued for an evidentiary hearing before a judge of this Court.

7. That there is no prima facie showing that such visitation would not interfere with the relationship between the custodial parent and the child.

8. That there is a prima facie showing that visitation rights would be in the best interests of the child.

9. That there is a prima facie showing that the petitioner and child have established emotional ties creating a parent and child relationship.

The trial judge, in an attached memorandum, reasoned that in order for appellant to receive an evidentiary hearing, she must present a prima facie case *on each* of the statutory factors under Minn.Stat. § 257.-022, subd. 2b (Supp.1989). The trial judge vacated the referee's order and dismissed appellant's petition because she had failed to establish a prima facie showing that visitation would not interfere with the parent-child relationship between respondents and the minor child. He wrote:

However the [appellant] has clearly not met her burden as to the third statutory

requirement. The recommendations of the Department of Court Services, the affidavits of the parties and the arguments of counsel make it clear to this Court that the conflict between the parties will most certainly cause any visitation between [appellant] and the child to interfere with the relationship between Respondent and child.

## ISSUE

Did the trial court err in finding appellant had failed to establish a prima facie showing of all factors under Minn.Stat. § 257.022, subd. 2b (Supp.1989), thereby denying appellant's request for an evidentiary hearing?

## ANALYSIS

Minn.Stat. § 257.022, subd. 2b provides:
When child has resided with other person. If an unmarried minor has resided in a household with a person, other than a foster parent, for two years or more and no longer resides with the person, the person may petition the district court for an order granting the person reasonable visitation rights to the child during the child's minority. The court shall *grant the petition if it finds that:*

(1) visitation rights would be in the best interests of the child;

(2) the petitioner and child had established emotional ties creating a parent and child relationship; *and*

(3) visitation rights would not interfere with the relationship between the custodial parent and the child.

The court shall consider the reasonable preference of the child, if the court considers the child to be of sufficient age to express a preference.

Minn.Stat. § 257.022, subd. 2b (Supp.1989) (emphasis added).

This is a question of first impression. The trial judge recognized this and borrowed from the analogous setting of a custody modification to find that appellant was required to present prima facie evidence on *all* of the factors set out in the statute before she could be entitled to an evidentiary hearing on her petition for visitation.

The trial judge relied on *Nice–Petersen v. Nice–Petersen*, 310 N.W.2d 471 (Minn. 1981). In his memorandum of law, the judge pointed out that in custody modification cases, the movant has the burden of producing prima facie evidence on each of the relevant statutory factors required for custody modification, and he then went on to state:

This Court now finds that this same standard shall be used when determining whether an evidentiary hearing shall be granted in a case, such as the instant case, where a party is seeking visitation rights with a minor child under Minnesota Statute Section 257.022, subd. 2b. Therefore, [appellant] must present a prima facie case that the statutory factors are met. She has not done so in this case.

Appellant first argues that the trial judge's reliance on *Nice–Petersen* is misplaced and she should not be required to make a prima facie showing under *Nice–Petersen* prior to receiving an evidentiary hearing on visitation under Minn.Stat. § 257.022, subd. 2b.

Appellant's argument misconstrues the clear meaning of the trial judge's memorandum. Appellant contends, by relying on *Nice–Petersen*, the trial judge is requiring her to make the same prima facie showing she would have to make if she were seeking a custody modification. Appellant argues at great length why satisfying the custody modification factors is not required by the visitation statute. Appellant is correct that Minn.Stat. § 257.022, subd. 2b does not require a showing of a significant change in circumstances and that the minor child was in physical or emotional danger; however, this argument is completely misplaced.

The clear intent of the trial judge's order and memorandum is that appellant must present prima facie evidence of the factors enunciated in Minn.Stat. § 257.022, subd. 2b prior to receiving an evidentiary hearing. Read in its entirety, the trial judge's memorandum *could not possibly be construed* to require satisfac-

tion of the statutory factors which would allow a change in physical custody.

Requiring a prima facie satisfaction of the factors in Minn.Stat. § 257.022, subd. 2b finds support in the clear language of the statute itself. A court shall:

> [G]rant the [visitation] petition *if it finds* that:
>
> (1) visitation rights would be in the best interests of the child;
>
> (2) the petitioner and child had established emotional ties creating a parent and child relationship; *and*
>
> (3) visitation rights would not interfere with the relationship between the custodial parent and the child.

Minn.Stat. § 257.022, subd. 2b (emphasis added). The language of the statute is not ambiguous. A court shall grant the petition if it finds that all factors, (1), (2), *and* (3), exist. "A statute whose meaning is plain must be given effect without further scrutiny." *In re Hutchinson*, 440 N.W.2d 171, 176 (Minn.App.1989), *pet. for rev. denied* (Minn. Aug. 9, 1989). If a court is unable to find the existence of one of the factors, it could not grant a visitation petition under the statute. Therefore, if a petitioner were unable to produce prima facie evidence on one of the factors, there is no reason for the court to hold an evidentiary hearing since it would be unable to find the existence of all three statutory factors from the outset and unable to grant the petition under the statute. The trial judge's adoption of the requirement that a petitioner must show prima facie evidence of all the factors in Minn.Stat. § 257.022, subd. 2b before receiving an evidentiary hearing was logical and consistent with the principles of judicial economy.

■ Appellant next argues, as the movant, she should not have the burden of proving the third statutory factor that "visitation rights would not interfere with the relationship between the custodial parent and the child." Minn.Stat. § 257.022, subd. 2b(3). She contends by requiring the movant to prove the third statutory factor, biological parents have been given a virtual veto power by simply testifying that the parties are in conflict. She argues only the biological parents possess evidence of their relationship with their minor child, and any presentation by petitioner as to how visitation would affect that relationship would be pure speculation.

Appellant's burden as it relates to proving the third statutory factor may be difficult and, perhaps, rightly so. Despite appellant's protestations, the focus of Minn. Stat. § 257.022, subd. 2b(3) is *not* whether the parties are in conflict (obviously they are or they would not be in litigation), but rather, whether the statute requires appellant to show that the "visitation rights would not interfere with the relationship between the custodial parent and the minor child." *See id.*

The burden the legislature has placed upon appellant is a heavy one, but in similar settings where a third party is seeking to intervene in the relationship of a custodial natural parent and child, the third party movant bears the burden of persuasion. In *Westphal v. Westphal*, 457 N.W.2d 226, 229 (Minn.App.1990), paternal grandparents who were seeking custody of their grandchild over the natural mother were denied an evidentiary hearing because they were unable to meet their burden of producing prima facie evidence that a significant change in circumstances had occurred and the child was in danger without the change in custody. In *Durkin v. Hinich*, 431 N.W.2d 553, 556 (Minn.App.1988), *pet. for rev. denied* (Minn. Jan. 26, 1989), a third party was able to meet the burden of proof necessary to an award of legal and physical custody of the child to the third party. Even in visitation cases involving both natural parents, the noncustodial parent bears the burden of showing a change in the visitation arrangements is warranted. *See, e.g., Griffin v. Van Griffin*, 267 N.W.2d 733, 735 (Minn.1978) (noncustodial father bears burden of persuading trial court that a resumption of visitation with his minor children is warranted.).

Appellant's argument to shift the burden of proof to the custodial natural parents fails to recognize that *but for* the legislative enactment of Minn.Stat. § 257.022, subd. 2b she would have no rights to visita-

tion whatsoever. *In re Welfare of R.A.N.*, 435 N.W.2d 71 (Minn.App.1989) is most telling in this regard.

In *R.A.N.*, the paternal grandparents sought visitation with the minor child of their son. *Id.* at 72. The opinion held that the only rights the grandparents had to visitation were either through the preceding version of Minn.Stat. § 257.022, subd. 2a or by a common law right derived through their son as the natural parent. *Id.* at 73. The son had terminated his parental rights in accordance with law, and the court held that this termination also cut off the grandparents' common law derivative rights to visitation. *Id.* The only option for visitation left was through the visitation statute, but since the grandparents did not satisfy the requirements of the statute, they were denied visitation. *Id.* at 73–4.

■ In the instant case appellant has no common law derivative right to visitation. Her *only* right to visitation must come from Minn.Stat. § 257.022, subd. 2b, and the legislature has set out what *must* be shown before she may be granted visitation. The statute states the appellant must petition the court for visitation, and the court shall grant the petition after it finds *all* three of the enumerated factors exist. The statute is clear as to what must be established before a third party will be granted visitation, and

> when a statute speaks with clarity in limiting its application to specifically enumerated subjects, its application shall not be extended to other subjects by process of construction.

*R.A.N.*, 435 N.W.2d at 73 (quoting *Martinco v. Hastings*, 265 Minn. 490, 495, 122 N.W.2d 631, 637 (1963)).

■ The very limited nature of appellant's possible right to visitation is further illustrated when compared to a natural parent's right to visitation. It has been stated that

> visitation is to be regarded as a parental right essential to the continuance and maintenance of a child-to-parent relationship between the child and noncustodial parent[.]

*Griffin*, 267 N.W.2d at 735. Further, this essential right of visitation between a child and its noncustodial parent is strenuously protected. Minn.Stat. § 518.175, subd. 5 (Supp.1989) provides:

> [T]he court *shall not restrict visitation* rights *unless* it finds that:
>
> (1) the visitation is likely to endanger the child's physical or emotional health or impair the child's emotional development; or
>
> (2) the noncustodial parent has chronically and unreasonably failed to comply with court-ordered visitation.

(Emphasis added.) Additionally, a hearing is required if the custodial parent seeks to restrict the noncustodial parent's visitation rights. *See id.*

■ Therefore, the natural parent has an essential right to visitation and can only thereafter, for good cause shown, be divested of that right. In contrast, appellant's limited right to visitation with the minor child in this case comes only after all three statutory factors of Minn.Stat. § 257.022, subd. 2b are established. Public policy in favor of fostering the development and harmony of a family unit weighs in favor of non-parental third parties being required to meet the stringent burden of Minn.Stat. § 257.022, subd. 2b prior to being granted visitation with a minor child not their own. *See, e.g., R.A.N.*, 435 N.W.2d at 73.

The trial judge properly required appellant to produce prima facie evidence to satisfy *all* three factors of Minn.Stat. § 257.022, subd. 2b as a prerequisite to granting an evidentiary hearing on visitation. In reviewing the trial court's order, we must determine the standard of review to be adopted.

■ *R.A.N* involved the third party grandparents seeking visitation under the predecessor to Minn.Stat. § 257.022, subd. 2a, and in that case, this court found that the trial court had not abused its discretion by denying the motion for visitation. *Id.* at 74. Using "abuse of discretion" as the standard of review in this case also finds support in the circumstances of parental

visitation cases. Trial courts have broad discretion in deciding questions relating to visitation, *see Manthei v. Manthei,* 268 N.W.2d 45, 45 (Minn.1978); *Bear v. Bear,* 415 N.W.2d 389, 393 (Minn.App.1987), and that discretion has been upheld where exercised to refuse to hold an evidentiary hearing on the issue of visitation. *See, e.g., Hunt v. Hunt,* 381 N.W.2d 467, 470 (Minn. App.1986). In reviewing a lower court for an abuse of discretion, inquiry is limited to whether the trial court made findings unsupported by the evidence or by improperly applying the law. *Lenz v. Lenz,* 430 N.W.2d 168, 169 (Minn.1988). Findings of a trial court in visitation cases may not be set aside unless clearly erroneous. *Griffin,* 267 N.W.2d at 735 (citing Minn. R.Civ.P. 52.01).

█ Appellant contends the trial court did not limit itself to a consideration of whether prima facie evidence on factor (3) existed, but it actually went so far as to conclude, based on the affidavits and Department of Court Services recommendation, that visitation *would* interfere with the parent-child relationship. The trial judge's memorandum seems to indicate that he did reach the merits of factor (3) in his decision to dismiss.

> The recommendations of the Department of Court Services, the affidavits of the parties and the arguments of counsel make it clear to this Court that the conflict between the parties will most certainly cause any visitation between [appellant] and the child to interfere with the relationship between Respondent and the child.

If there were sufficient evidence for the trial judge to reach the merits of factor (3), then his finding of a lack of a prima facie case on whether visitation would interfere with the child-parent relationship would be clearly erroneous.

█ While the trial judge's memorandum may be in error, his finding and order are not. Having reviewed the entire district court file, to include all the affidavits submitted by appellant as well as the reports of Dr. Jil Leverone and the Department of Court Services, as appellant cor- rectly points out in her brief, the *only* evidence submitted regarding the issue of possible interference with the relationship between K.R.M. and her parents is contained in the report of Dr. Leverone. Dr. Leverone's opinion was:

> [T]here appears to be no reason to recommend no visitation between K.R.M. and Ms. Kulla. A bond between the two was evident during the observed session. In addition, *K.R.M.'s contact with Ms. Kulla should not be expected to interfere with K.R.M.'s relationship with her biological parents.* Ms. Kulla has demonstrated in interview and in supervised visit with K.R.M. that she is respectful of the rules and limits imposed by Ms. McNulty and Mr. Marrone. If the parents can be trusted to manage K.R.M. in a reasonable manner, without undue restrictions, the relationship between K.R.M. and Ms. Kulla should serve to enhance K.R.M.'s life and growth.

(Emphasis added.)

Dr. Leverone's observations were limited to a brief monitored interaction between appellant and K.R.M. Dr. Leverone made no independent observations of the nature and stability of the relationship between K.R.M. and her parents. Consequently, she was without a basis on which to form an opinion as to whether visitation by appellant would interfere with the child-parent relationship in any way. Dr. Leverone's lack of exposure to the child-parent relationship is further illustrated by her own report where she states:

> In the event that further evaluation is requested for [appellant], it would make sense to *include all three parties. This would assist the court in determining if and how Ms. McNulty and Mr. Marrone are able to make decisions for K.R.M.* in *her* best interests.

(Emphasis added.)

The record lacks any other competent evidence bearing on whether visitation between appellant and K.R.M. would interfere with the child's relationship with her parents. Appellant has failed to produce a prima facie case on the third statutory factor of Minn.Stat. § 257.022, subd. 2b. While the trial judge's memorandum may

have been wrong, his finding was correct. "Correct decisions based upon incorrect reasons should not be reversed." *Milbank Mut. Ins. Co. v. United States Fidelity & Guar. Co.,* 332 N.W.2d 160, 164 (Minn. 1983).

If appellant has any right to visitation with K.R.M., it can be exercised only after a satisfactory showing that *all* three factors set out in Minn.Stat. § 257.022, subd. 2b have been met. Appellant has failed to produce a prima facie case on the third statutory factor. The trial judge did not abuse his discretion by denying appellant's request for an evidentiary hearing. *See, e.g., Hunt,* 381 N.W.2d at 470.

■ Finally, appellant argues that "everyone * * * found that visitation between K.R.M. and [appellant] would be in the best interests of the child," and consequently the trial court should have ordered visitation simply on a finding of the best interests of the child notwithstanding the express provisions of Minn.Stat. § 257.022, subd. 2b.

Appellant overstates the case. Everyone *did not* find that visitation was in K.R.M.'s best interests. What the referee and the trial judge found was that, although strongly disputed by the parties, there simply was a *prima facie* case that visitation was in K.R.M.'s best interests. No findings were ever made that visitation between appellant and K.R.M. would in fact be in the child's best interest. In fact, the report from the Department of Court Services, as restated in the findings of both the referee and the trial judge's orders, concluded only that "a form of visitation rights for [appellant] *may be* in K.R.M.'s best interest." (Emphasis added.) Similarly, Dr. Leverone's report merely states, "the relationship between K.R.M. and [appellant] *should serve* to enhance [K.R.M.'s] life and growth." (Emphasis added.) Finally, the trial court was not free, as appellant suggests, to disregard the clear requirements of Minn.Stat. § 257.022, subd. 2b.

In *R.A.N.,* 435 N.W.2d at 73, the paternal grandparents made the same argument as appellant that the court should be guided not by the statute but by the best interests of the child. In *R.A.N.* this court reasoned that the limited visitation rights granted to the grandparents by Minn.Stat. § 257.022 could not be disregarded. *Id.*

■ While at the time of the decision in *R.A.N.* the best interests of the child were not a factor to be considered under the statute, the subsection of the statute at issue in the present case makes the best interests of the child something the court must consider. *See* Minn.Stat. § 257.022, subd. 2b(1).

However, we keep returning to the statutory requirement that the court must find not only that visitation is in the child's best interest, but it must also find that a parent-child relationship existed between a petitioner and the minor child and that visitation would not interfere with the relationship of the child and the custodial natural parents. The three factors are made co-equal by the statute's plain language, and a trial court would be without authority to order visitation based on only one of the factors to the exclusion of the other two. Just as in *R.A.N.,* appellant's right to visitation with K.R.M. is dictated by a strict application of Minn.Stat. § 257.022, subd. 2b as a whole. Contrary to appellant's argument, in the context of the present statute, best interests of the child is but one of three factors the court must find to exist before it can grant a petition for third-party visitation with a minor child.

The trial judge's order vacating the referee's order and dismissing appellant's petition for visitation was not an abuse of discretion.

## DECISION

The trial court properly required appellant to establish a prima facie showing of each of the statutory factors of Minn.Stat. § 257.022, subd. 2b (Supp.1989). The trial court correctly determined that appellant had failed to meet her burden of showing that visitation would not interfere with the natural parent-child relationship.

Affirmed.