**In re the Matter of the Petition of Ervan Valentine WEILER, et al., Petitioners, Appellants,**

v.

**Victoria LUTZ,**

**Washington County Community Services, Respondents.**

No. CX–93–6.

Court of Appeals of Minnesota.

June 15, 1993.

Review Granted Aug. 6, 1993.

Wright S. Walling, Gary A. Debele, Walling & Berg, Minneapolis, for Ervan Valentine Weiler, et al., petitioners.

Kenneth J. Jacobs, Forest Lake, for Victoria Lutz.

Richard M. Arney, Washington County Atty., Douglas H. Johnson, Asst. County Atty., Stillwater, for Washington County Community Services.

Mark J. Vierling, Eckberg, Lammers, Briggs, Wolff & Vierling, Stillwater, for respondent guardian ad litem.

James I. Moberg, Stillwater, for respondent child.

Considered and decided by NORTON, P.J., and SCHUMACHER and PETERSON, JJ.

## OPINION

SCHUMACHER, Judge.

Appellants Ervan and Elaine Weiler challenge denial of their motion to intervene in a Child in Need of Protective Services (CHIPS) proceeding involving respondent J.A.D., their former foster child. Weilers also appeal denial of their motions for an evidentiary hearing on their petition for custody of J.A.D., for visitation or temporary custody of J.A.D., and for replacement of J.A.D.'s guardian ad litem. We affirm.

## FACTS

J.A.D. was born on May 12, 1987. In February 1988, he was found to be a neglected child and was placed in foster care with Weilers. He resided with Weilers until late August 1992, when he was placed with his maternal aunt and uncle.

In April 1992, J.A.D.'s mother, respondent Victoria Lutz, voluntarily terminated her parental rights to J.A.D., with the understanding that respondent Washington County Community Services would attempt to place J.A.D. with his maternal aunt and uncle. At Lutz's request, the termination was vacated in August 1992, pending resolution of Weilers' attempts to gain permanent custody. That same month, Weilers moved for an evidentiary hearing to consider J.A.D.'s best interests and for consolidation of the evidentiary hearing with J.A.D.'s CHIPS proceeding. In September 1992, Weilers moved to intervene in the CHIPS proceedings. Weilers also requested temporary custody or visitation and replacement of J.A.D.'s guardian ad litem.

The district court denied the motions to intervene and for an evidentiary hearing on the grounds that Weilers did not have a right to initiate or participate in these proceedings. In addition, the court found that even if Weilers were entitled to request an evidentiary hearing, they had failed to make the necessary prima facie case. Weilers' remaining motions were also denied.

## ISSUES

1. Did the district court err by denying Weilers' motion to intervene in the CHIPS proceeding?

2. Did the district court err by denying Weilers' motion for an evidentiary hearing?

3. Did the district court err by denying Weilers' motion for temporary custody?

4. Did the district court err by denying Weilers' motion for visitation?

5. Did the district court err by denying Weilers' motion for replacement of J.A.D.'s guardian ad litem?

## ANALYSIS

**1. Weilers' Right to Intervene**

The district court's refusal to permit intervention as of right is an appealable

order.[1] *In re C.J.*, 481 N.W.2d 861, 862 (Minn.App.1992), *pet. for rev. denied* (Minn. Apr. 29, 1992). On review, this court will independently assess the appropriateness of an order concerning an intervention as of right. *Norman v. Refsland*, 383 N.W.2d 673, 676 (Minn.1986).

Weilers maintain their close relationship with J.A.D. provides a basis for intervention. Emotional bonds between foster parents and their foster children, however, do not create a substantive right on the part of the foster parents. *See In re E.G.*, 268 N.W.2d 420, 421–22 (Minn. 1978) (foster parents do not have right to intervene in foster child's neglect hearing). Weilers argue that *In re E.G.* is no longer authoritative since the statute on which the decision was based has been repealed. *See* Minn.Stat. § 257.07 (repealed 1978).

*In re E.G.* does not hold that foster parents have the right to intervene in proceedings involving their foster children unless barred from doing so by statute. Rather, the decision states that involvement by foster parents can interfere with "clearly established and long-recognized rights" of the child's "natural family." *In re E.G.* at 422. That concern is no less acute today. *See, e.g., In re D.L.*, 486 N.W.2d 375, 380 (Minn.1992) (statutes and common law both accord custodial preference to near relatives), *cert. denied* —— U.S. ——, 113 S.Ct. 603, 121 L.Ed.2d 539 (1992). We find that foster parents who wish to intervene by right in proceedings involving their foster children must show specific authority for such a right.

Weilers claim they have a right to intervene under Minn.R.Civ.P. 24.01. This rule allows intervention when an "applicant claims an interest" that may be impaired by "disposition of the action." This rule does not create a substantive right. *See* Minn.Stat. § 480.051 (1992). Rules of civil procedure do not modify or enlarge substantive rights. We therefore find no support in this rule for Weilers' right to intervene.

Weilers contend support can be found in Minn.Stat. § 260.155, subd. 1a (1992). This statute allows "the parents, guardian, or lawful custodian" of a child to participate in juvenile hearings. *Id.* A "custodian" is

> any person who is under a legal obligation to provide care and support for a minor or who is in fact providing care and support for a minor.

Minn.Stat. § 260.015, subd. 14 (1992).

We have previously held this language gives foster parents who meet the statutory criteria a right to intervene in some proceedings concerning their foster children. *In re C.J.*, 481 N.W.2d at 863. There, foster parents who had physical custody of a child and were providing for his care and support moved to intervene in the termination of the parental rights of the child's father. We reasoned:

> The definition of custodian includes those who have legal and physical custody of a child * * * [T]he foster parents fall under the definition of custodian and therefore they have the right to participate in the termination proceedings.

*Id.* at 863.

In this case, Weilers no longer had legal or physical custody when they moved to intervene in J.A.D.'s CHIPS proceeding. They were not providing J.A.D. with care and support and were under no legal obligation to do so. We recognize that J.A.D.'s best interests are the primary consideration in this matter. *See id.* Nevertheless, our guiding principle is to "ascertain and effectuate the legislature's intent." *Id.* at 863 (citing Minn.Stat. § 645.16 (1990)). The legislature has limited the right of intervention to "parents, guardians, and lawful custodians." Minn. Stat. § 260.155, subd. 1a. Weilers are none of these. This language is unambiguous, and we may not disregard its plain meaning. Minn.Stat. § 645.16 (1992).

---

**1.** Weilers alternatively claim the district court erred by denying their request for permissive intervention under Minn.R.Civ.P. 24.02. Denial of a request for permissive intervention is not appealable. *Norman*, 383 N.W.2d at 675.

## 2. Request for Evidentiary Hearing

■ Absent an abuse of discretion, we will not reverse a denial of an evidentiary hearing on a custody modification motion. *Abbott v. Abbott*, 481 N.W.2d 864, 868 (Minn.App.1992). A foster parent may have standing to request an evidentiary hearing under Minn.Stat. § 518.18 (1992). *See In re E.A.Q.D.*, 405 N.W.2d 262, 264 (Minn.App.1987) (dismissal of third party motion brought under chapter 518 "would exalt form over substance"); *but cf. Kienlen v. Kienlen*, 227 Minn. 137, 141, 34 N.W.2d 351, 354 (1948) (strictly construing standing under earlier version of Minn. Stat. § 518.18). Before a hearing may be granted, however, foster parents need to make a prima facie case in support of modifying custody. *See Abbott*, 481 N.W.2d at 867 (prima facie case required to trigger evidentiary hearing).

■ A prima facie case must be supported by allegations of fact that, if true, show (1) a significant change in the circumstances of the child or the child's custodians; (2) modification of custody would be in the child's best interests; (3) the current custody arrangement endangers the child's physical or emotional health or emotional development; and (4) the harm associated with the change in custody would be outweighed by the benefits of the change. *Id.* at 868. Weilers contend that the district court abused its discretion when it found they had not made a prima facie case for modification of custody. We have reviewed the documentary record created by Weilers' affidavits and find no abuse of discretion. *See id.* at 867–68, 868 n. 2 (on appeal, this court may review moving party's affidavits as long as district court states prima facie case was not made).

First, Weilers have not alleged that a significant change in circumstances has occurred since J.A.D. was placed in the custody of his aunt and uncle. In fact, the district court found that J.A.D. was "doing well" in his aunt and uncle's home.

■ Second, Weilers' allegations do not show that modification of custody would be in J.A.D.'s best interests. A district court has broad discretion to determine a child's best interests. *In re D.L.*, 486 N.W.2d at 380. Both the legislature and the supreme court have emphasized that a child's best interests are presumptively served by family placement. Minn. Stat. § 260.181, subd. 3 (1992) provides:

> The court, in transferring legal custody of any child * * *, shall place the child, in the following order of preference, in the absence of good cause to the contrary, in the legal custody or guardianship of an individual who (a) is the child's relative * * * [unless] that would be detrimental to the child.

In other words,

> placement with a family member is presumptively in the best interests of a child, absent a showing of good cause to the contrary or detriment to the child.

*In re D.L.*, 486 N.W.2d at 380. A preference for placement with relatives applies in *"all* adoptions and foster care placements." *Id.* (emphasis in original).[2]

■ "Good cause" does not lend itself to precise definition and must be considered in light of the facts. *Id.* at 380–81. It is clear, however, that the pain caused by separation from a foster parent is not, without more, good cause sufficient to overcome the preference for family placement. *Id.* at 381.

Third, Weilers have not made allegations that would compel a conclusion that J.A.D.'s present environment endangers his physical health or emotional health or development. The district court weighed the evidence before it and specifically found that J.A.D. was not endangered or impaired by being in the custody of his aunt and uncle.

■ Fourth, Weilers' allegations do not suggest that the harm associated with changing custody will be outweighed by the benefits of the change. It is undisput-

---

**2.** If there is no reason to believe that an attempt to place a child in a relative's custody will fail, the custody petitions of nonrelatives need not be considered. *See In re D.L.*, 486 N.W.2d at 381 (applying this procedure to adoption petitions).

ed that J.A.D. benefitted greatly from his five-year placement with Weilers. Nonetheless, the benefits J.A.D. may receive from a close relationship with his blood relatives outweighs any harm caused by separation from Weilers. *See In re D.L.,* 486 N.W.2d at 381.

The district court was within its discretion in finding that Weilers had failed to make a prima facie case. There was no abuse of discretion in the court's denial of their motion for an evidentiary hearing.

### 3. Temporary Custody

A district court's placement decision in a CHIPS proceeding will be affirmed as long as it is not arbitrary. *In re T.J.M.,* 413 N.W.2d 221, 225 (Minn.App. 1987). In the absence of good cause to the contrary, a child should be provided foster care by a relative. Minn.Stat. § 260.181, subd. 3. Aunts and uncles are relatives for the purposes of establishing dispositional priority. Minn.Stat. § 260.015, subd. 13 (1992). The evidence supports the finding that J.A.D.'s placement with his aunt and uncle was in his best interest. The district court did not abuse its discretion by refusing to grant temporary custody to Weilers.

### 4. Visitation

A district court has broad discretion in decisions relating to visitation. *Kulla v. McNulty,* 472 N.W.2d 175, 183 (Minn.App.1991), *pet. for rev. denied* (Minn. Aug. 29, 1991). Weilers provide no authority in support of their request for visitation. If there is no "common law * * * right to visitation" a party must show that a statute creates a visitation right. *See id.* at 182 (nonparent required to show statutory basis for visitation). Minn.Stat. § 257.022, subd. 2b (1992) implicitly bars an award of visitation rights to a foster parent. The statute provides:

> If an unmarried minor has resided in a household with a person, *other than a foster parent,* for two years or more and no longer resides with the person, the person may petition the district court for an order granting the person reasonable

visitation rights to the child during the child's minority.

*Id.* (emphasis added). Since the statute clearly limits its application to specific subjects, it should not be construed to apply to other subjects. *Kulla,* 472 N.W.2d at 182. Furthermore, nonparental third parties are entitled to visitation only under clearly defined circumstances. *See id.* While we offer no opinion on the wisdom of a voluntary visitation agreement, we cannot say the district court abused its discretion by refusing to order visitation.

### 5. Appointment of a Different Guardian ad Litem.

A guardian ad litem's duty is to protect the best interests of the child. *In re J.S.,* 470 N.W.2d 697, 700 (Minn.App. 1991), *pet. for rev. denied* (Minn. July 24, 1991). The district court retains broad discretion in determining the best interests of the child. *In re D.L.,* 486 N.W.2d at 380. By extension, the court has broad discretion in determining whether the best interests of the child mandate replacement of the guardian ad litem.

Weilers disagree with the recommendations of J.A.D.'s guardian ad litem, but have presented no evidence that the guardian was not acting with J.A.D.'s best interests in mind. The district court was well within its discretion in refusing to replace the guardian.

### DECISION

The district court properly denied Weilers' motion to intervene in J.A.D.'s CHIPS proceeding. The court did not abuse its discretion in denying Weilers' motions for an evidentiary hearing, temporary custody, visitation, or replacement of J.A.D.'s guardian ad litem.

**Affirmed.**